# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Warren K. Urbom | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 97 C 2102 | **DATE** | 5/31/2002 |
| **CASE TITLE** | A. Robert McKay vs. Town & Country Cadillac,Inc.,etal | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter second Memorandum Opinion and Order: Plaintiff's motion to amend the judgment (107-1) is granted in part. Defendant's motion for summary judgment (46-1) is granted in part. The defendant is entitled to summary judgment on the plaintiff's claim that he was discriminated against in violation of the ADA.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | | |
|---|---|---|---|---|---|
| | No notices required, advised in open court. | | | number of notices | Document Number |
| | No notices required. | | | | |
| ✓ | Notices mailed by judge's staff. | | | JUN 0 7 2002 | 191 |
| | Notified counsel by telephone. | | | date docketed | |
| | Docketing to mail notices. | | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| | Mail AO 450 form. | | | 5/31/2002 | |
| | Copy to judge/magistrate judge. | | 02 JUN -6 AM 8: 53 | date mailed notice | |
| GL | courtroom deputy's initials | | FILED-ED 10 | GL | |
| | | | Date/time received in central Clerk's Office | mailing deputy initials | |



| | | |
|---|---|---|
| A. ROBERT McKAY, | ) | 97 C 2102 |
| | ) | |
| Plaintiff, | ) | |
| | ) | SECOND MEMORANDUM AND |
| vs. | ) | ORDER ON PLAINTIFF'S MOTION |
| | ) | TO AMEND THE JUDGMENT |
| TOWN AND COUNTRY CADILLAC, | ) | |
| INC. and MAX COHEN, | ) | |
| | ) | |
| Defendants | ) | |

Before me once again is the "Plaintiff's Motion to Amend the Judgment Pursuant to
FRCP 59(e)," filing 107. At the conclusion of my initial review of this motion, I determined that
the defendant should be allowed to file a motion for summary judgment on the plaintiff's claim
that he was retaliated against in violation of the Americans with Disabilities Act (ADA), 42
U.S.C.A. § 12101 et seq. (West 1995). (See Mem. and Order on Pl.'s Mot. to Amend J., filing
125, at 1, 4-5.) I also determined that my ruling on the plaintiff's motion to amend the judgment
would be suspended until after the defendant's motion for summary judgment on the plaintiff's
retaliation claim had been decided. (See id. at 5.) I have now resolved "Town & Country
Cadillac, Inc.'s Motion for Summary Judgment on Plaintiff's Retaliation Claim," filing 128.
(See Mem. and Order on Def. Town & Country Cadillac Inc.'s Mot. for Summ. J. on Pl.'s
Retaliation Claim.) Therefore, the time has come to revisit the plaintiff's motion to amend the
judgment. I find that the plaintiff's motion must be granted in part.

## I.  BACKGROUND

The plaintiff originally filed a four-count complaint against his former employer, Town
and Country Cadillac, and former supervisor, Max Cohen, that included claims based upon the
Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 et seq. (Count I), the
Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 et seq. (Count II), the intentional
infliction of emotional distress (Count III), and defamation (Count IV). (See Complaint, filing
1.) As a result of Town & Country's and Cohen's motion to dismiss the complaint pursuant to
Federal Rule of Civil Procedure 12(b)(6) (filing 5), Defendant Max Cohen was dismissed from
Counts I and II, and Count III was dismissed in its entirety. (See filing 13; McKay v. Town &
Country Cadillac, Inc., 991 F. Supp. 966, 973 (N.D. Ill. 1997).) Later, Count I of the complaint
was voluntarily dismissed in its entirety pursuant to a joint motion filed by the parties. (See
filings 103 and 104.) On April 21, 2000, I granted Town and Country's Motion for Summary
Judgment on Count II of the complaint, filing 46, on the ground that the plaintiff failed to provide

evidentiary materials demonstrating that there was a genuine issue whether the plaintiff was "disabled" within the meaning of the ADA. (See Mem. and Order on Def. Town & Country Cadillac's Mot. for Summ. J., filing 99.) Since the plaintiff's defamation claim appeared to be the only remaining count, I found it necessary to consider whether supplemental jurisdiction ought to be retained over that claim. (See Mem. and Order on Def. Max Cohen's Mot. for Summ. J. and Other Pending Motions, filing 108.) I concluded that, pursuant to 28 U.S.C. § 1367(c)(3), supplemental jurisdiction should not be exercised and the plaintiff's defamation claim should be dismissed without prejudice. (See id.) I therefore entered judgment terminating this case on May 17, 2000. (See filings 109, 110.)

The plaintiff then filed his motion to amend the judgment, filing 107, arguing, inter alia, that I erred in "[g]ranting Defendant [Town & Country's] Motion for Summary Judgment on Count II, which included allegations of retaliation, on the basis that Plaintiff could not establish that he was disabled within the meaning of the ADA." (Pl.'s Mot. to Amend J., filing 107, at 3.) The parties presented me with arguments directed at the merits of the retaliation claim (see Pl.'s Mem. in Supp. of Mot. to Amend J. Pursuant to FRCP 59(e) [hereinafter "Pl.'s Br."], filing 113, at 3; Town & Country Cadillac's Response to Pl.'s Mot. to Alter or Amend J. [hereinafter "Def.'s Br."], filing 122, at 1-12; Pl.'s Reply to Def.'s Response to Pl.'s Mot. to Amend J. Pursuant to FRCP 59(e) [hereinafter "Pl.'s Reply Br."], filing 124, at 1-14), and the defendant requested that its arguments be considered as a supplement to its original motion for summary judgment. (See Def.'s Br., filing 122, at 12.) I agreed with the plaintiff that a retaliation claim had been alleged in Count II of the complaint and that the defendant's motion for summary judgment failed to address that claim, but I decided that it would be inappropriate to evaluate the merits of the retaliation claim using only the limited argument provided in the parties' briefs. (See Mem. and Order on Pl.'s Mot. to Amend J., filing 125.) Therefore, I allowed the defendant to file a new motion for summary judgment directed toward the retaliation claim. (See id.) I also decided to retain the plaintiff's motion to amend the judgment pending the resolution of this new motion for summary judgment. (See id.)

Unfortunately, it has taken approximately eighteen months to resolve the defendant's motion for summary judgment on the plaintiff's retaliation claim. (See Mem. and Order on Def. Town & Country Cadillac Inc,'s Mot. for Summ. J. on Pl.'s Retaliation Claim (dated April 23, 2002).) Despite the lengthy interval, it is now appropriate to return to the plaintiff's motion to amend the judgment and study each of the arguments presented therein.

## II. STANDARD OF REVIEW

[Federal Rule of Civil Procedure] 59(e) permits a district court to entertain a motion to alter or amend a judgment. A claimant can invoke the rule to direct a court's attention to matters such as newly discovered evidence or a manifest error of law or fact. See Bank of Waunakee v. Rochester Cheese Sales, Inc., 906 F.2d 1185, 1191-92 (7th Cir. 1990). The rule essentially enables a district court to

2

correct its own errors, sparing the parties and the appellate courts the burden of unnecessary appellate proceedings. Charles v. Daley, 799 F.2d 343, 348 (7th Cir. 1986). The rule must be invoked, however, within ten days of the entry of judgment. And the rule may not be used to raise novel legal theories that a party had the ability to address in the first instance. Federal Deposit Ins. Corp. v. Meyer, 781 F.2d 1260, 1268 (7th Cir. 1986).

Russell v. Delco Remy Division of General Motors Corp., 51 F.3d 746, 749 (7th Cir. 1995). A Rule 59(e) motion may be appropriate when "the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension. A further basis for a motion to reconsider would be a controlling or significant change in the law or facts since the submission of the issue to the Court." Bank of Waunakee v. Rochester Cheese Sales, Inc., 906 F.2d 1185, 1191 (7th Cir. 1990) (quoting Above the Belt, Inc. v. Mel Bohannan Roofing, Inc., 99 F.R.D. 99, 101 (E.D. Va. 1993). "Rule 59(e) motions may not be used, however, to raise arguments which could have been raised prior to the issuance of the judgment . . . ." Pacific Insurance Co. v. American National Fire Insurance Co., 148 F.3d 396, 403 (4th Cir. 1998) (citing Russell v. Delco Remy Division of General Motors Corp., 51 F.3d 746, 749). "The rule does not provide a vehicle for a party to undo its own procedural failures, and it certainly does not allow a party to introduce new evidence or advance arguments that could and should have been presented to the district court prior to the judgment." Moro v. Shell Oil Co., 91 F.3d 872, 876 (7th Cir. 1996).

## III.   ANALYSIS

In his motion, the plaintiff argues that there are six different grounds for amending the judgment. (See Pl.'s Mot. to Amend J., filing 107.) Although the plaintiff's memorandum in support of this motion is divided into only three sections, it seems that none of the six original arguments presented in his motion has been abandoned. (See Pl.'s Br., filing 113.)[1] I shall analyze each of the plaintiff's arguments in turn using an organizational structure loosely based upon that of the plaintiff's supporting memorandum.

### A.   The ADA Retaliation Claim

The plaintiff first argues that the judgment must be amended because the defendant's summary judgment motion did not address the plaintiff's retaliation claim:

---

[1]For example, in his motion the plaintiff argues that I erred by "[d]ismissing Plaintiff's Count IV (Defamation) without prejudice on the basis that there were no remaining federal claims." (See Pl.'s Mot. to Amend J., filing 107, at 4.)  There is no elaboration upon this argument in the plaintiff's memorandum, but the plaintiff does refer me to his motion "for other aspects which he respectfully believes require amendment of the judgment to avoid exceeding the page limits on briefs." (Pl.'s Br., filing 113, at 15.)

The Court erred in granting summary judgment on the retaliation claims in Count II because it decided issues beyond those presented by the parties for determination. The retaliation claim was properly pled in the Plaintiff's Complaint. Defendant [Town & Country] did not contest this claim in its Motion for Summary Judgment. Its only mention of this issue was in the Reply. New issues[] cannot be raised in a Reply. Retaliation claims can proceed even if the Plaintiff is determined not to be disabled.

(Pl.'s Br. at 1.) I agree with the plaintiff. I have already determined that a retaliation claim was adequately pleaded in the complaint. (See Mem. and Order on Pl.'s Mot. to Amend J., filing 125, at 2-4.) I have also determined that the defendant did not address the retaliation claim in its original motion for summary judgment (see id. at 4), and that the plaintiff's retaliation claim can proceed despite the fact that the plaintiff was not disabled within the meaning of the ADA (see Mem. and Order on Def. Town & Country Cadillac Inc.'s Mot. for Summ. J. on Pl.'s Retaliation Claim at 7-10). Furthermore, the plaintiff has come forward with sufficient evidence to demonstrate that a portion of his claim of retaliation in violation of the ADA should proceed to trial. (See generally Mem. and Order on Def. Town & Country Cadillac Inc.'s Mot. for Summ. J. on Pl.'s Retaliation Claim.) My entry of judgment on May 17, 2000, was based upon a misapprehension that the granting of the defendant's original motion for summary judgment, filing 46, resulted in the elimination of all of the plaintiff's federal causes of action when it was coupled with other dismissals. Therefore, my decisions to decline to extend supplemental jurisdiction over the plaintiff's defamation claim (see filing 108) and to enter judgment terminating this case (see filings 109, 110) were improper. The plaintiff's motion to amend the judgment must be granted, and the judgment entered on May 17, 2000, must be vacated so that the plaintiff's retaliation and defamation claims can proceed.

### B.    The ADA Discrimination Claim

The plaintiff also argues that the judgment must be amended because I erroneously granted summary judgment in favor of the defendant on the plaintiff's claim of discrimination in violation of the ADA. Each of the plaintiff's specific arguments shall be reviewed in turn.

1.    Soileau v. Guilford of Maine, Inc.

The plaintiff argues:

> The Court erred in holding that a reasonable jury could not find that Plaintiff was disabled in reliance on *Soileau v. Guilford of Maine*, citing that case for the holding that "a mere alteration in lifestyle does not amount to a substantial limitation of a major life activity." That is not the holding of *Soileau* nor is it the law that lifestyle changes cannot support a finding of substantial limitation. Such a rule would be contrary to the principles of the ADA concerning limitations imposed by or not mitigated by mitigating measures as explained by the Supreme

Court in *Sutton*.

(Pl.'s Br. at 3.) Although I believe that a plain reading of the Memorandum and Order on Defendant Town and Country Cadillac's Motion for Summary Judgment, filing 99, exposes the errors inherent in the plaintiff's argument, I shall take a moment to explain why I find the plaintiff's contentions to be without merit.

On pages 7-10 of his brief in response to the defendant's motion for summary judgment, the plaintiff recognized that he was required to prove that he was substantially limited by his alleged disability. (See Pl.'s Response to Def. Town and Country's Mot. for Summ. J., filing 62, at 7-10.) In order to make this showing, the plaintiff suggested that he was "substantially limited in the major life activities of reproduction and nurturing family relations[,] social functioning and caring for himself." (Id. at 7.) The plaintiff's discussion of his limitations in the "major life activities" of "social contacts and family relations" is confined to a single paragraph (although there is a reference to the preceding paragraph therein), which I quote in full for the convenience of the reader:

> Social contacts and family relations are also major life activities. *Mann v. City of Inglewood, unpublished decision,* 1998 U.S. App. LEXIS 29034 (9th Cir. 1998) (*See also*[] *Olmstead v. L.C.,* 1999 U.S. LEXIS 4368, 119 S.Ct. 2176, 2187, 144 L. Ed. 2d 540 (1999) (family relations and social contacts are everyday activities of individuals in the context of the ADA). Mr. McKay has produced significant evidence he is substantially limited in his social contacts and family relations because of his alcoholism. 12(N)II, 60-61,66-67. As discussed above, his alcoholism has had a devastating effect on his family relations. He cannot go to bars or events where alcohol is served, [and] is kept from developing business and social relationships because of this. 12(N)(II) 66-67. This will be lifelong. A jury could find that his alcoholism creates substantial limitations in the major life activity of social contacts and family relationships.

(Pl.'s Response to Def. Town and Country's Mot. for Summ. J., filing 62, at 8.)

In reply to the plaintiff's argument, the defendant referred me to Solieau v. Guilford of Maine, Inc., 928 F. Supp. 37 (D. Me. 1996), aff'd, 105 F.3d 12 (1st Cir. 1997). In the Memorandum and Order on Defendant Town and Country Cadillac's Motion for Summary Judgment, filing 99, I first reviewed Mann, Olmstead, and Soileau to determine whether family and social functioning are major life activities within the meaning of the ADA. (See Mem. and Order on Def. Town & Country Cadillac's Mot. for Summ. J., filing 99, at 5-6.) Although I concluded that the cases cited by Defendant Town and Country were impertinent, I also decided to reject the court's conclusion in Soileau that the "inability to interact with others does not implicate a major life activity." Solieau v. Guilford of Maine, Inc., 928 F. Supp. at 48. (See Mem. and Order on Def. Town & Country Cadillac's Mot. for Summ. J., filing 99, at 5-6.)

I then proceeded to determine "whether the plaintiff was significantly restricted as to the condition, manner, or duration under which he could perform family or social functions as compared to the condition, manner, or duration under which the average person in the general population can perform family or social functioning." (Mem. and Order on Def. Town & Country Cadillac's Mot. for Summ. J., filing 99, at 11.) In analyzing this question, I noted that "a mere alteration in lifestyle does not amount to a substantial limitation of a major life activity." (Mem. and Order on Def. Town & Country Cadillac's Mot. for Summ. J., filing 99, at 12 (citing Soileau v. Guilford of Maine, Inc., 928 F. Supp. at 47-48 ("While Soileau's contentions may be true, the fact that Soileau's disorder caused him to alter his lifestyle does not bring him under the umbrella of the ADA's major life activity requirement.")).) The plaintiff argues that this citation to Soileau, along with a second reference to that case on page 13 of the Memorandum and Order on Defendant Town and Country Cadillac's Motion for Summary Judgment, filing 99, was objectionable.

The plaintiff begins, "The section on which this Court apparently relied is a footnote, Id. at 47, fn. 12 . . . ." (Pl.'s Br. at 4.) On the contrary and as reflected in the citation I provided in the Memorandum and Order on Defendant Town and Country Cadillac's Motion for Summary Judgment, I relied on pages 47-48 of Soileau. (See Mem. and Order on Def. Town & Country Cadillac's Mot. for Summ. J., filing 99, at 12.) Incidentally, footnote 12 does not appear on page 47, but on page 48 of volume 928 of the Federal Supplement. See Soileau v. Guilford of Maine, Inc., 928 F. Supp. at 48 n.12. At any rate, the plaintiff harvests from this footnote a series of cases that he feels supports his argument that "lifestyle changes cannot as a matter of law support a finding of substantial limitation." (Pl.'s Br. at 5. See also id. at 4-5.) All of these cases, including Soileau, were available to the plaintiff at the time he submitted his response to the defendant's motion for summary judgment. Instead, he provided no pertinent law in support of his argument. (See Pl.'s Response to Def. Town and Country's Mot. for Summ. J., filing 62, at 8.) A motion to amend the judgment is not designed to provide a plaintiff with an opportunity to make arguments he could have made previously. See Russell v. Delco Remy Division of General Motors Corp., 51 F.3d 746, 749 (7th Cir. 1995) ("[T]he rule may not be used to raise novel legal theories that a party had the ability to address in the first instance."); Moro v. Shell Oil Co., 91 F.3d 872, 876 (7th Cir. 1996).

The plaintiff claims that "[t]he court based its ruling that Plaintiff was not disabled on Soileau v. Guilford of Maine, Inc., 928 F. Supp. 37 (D. Me. 1996) . . . ." (Pl.'s Br. at 4.) However, my ruling that the plaintiff was not substantially limited in social functioning was not "based on" Soileau, but rather upon the inadequacy of the evidence offered in support of the plaintiff's claim that he was substantially limited in family or social functioning - - a claim that included the unpersuasive argument that while abstaining from alcohol use, the plaintiff is substantially limited in social functioning due to the fact that he "cannot go to bars."[2] (See Pl.'s

---

[2]To be fair, the plaintiff argued that "[h]e cannot go to bars *or events where alcohol is served*, [and] is kept from developing business and social relationships because of this." (Pl.'s Response to Def. Town and Country's Mot. for Summ. J., filing 62, at 8 (emphasis added).)

Response to Def. Town and Country's Mot. for Summ. J., filing 62, at 8; Mem. and Order on Def. Town & Country Cadillac's Mot. for Summ. J., filing 99, at 11-12.) I do not intend to repeat my analysis here, because it is clearly set forth in the Memorandum. (See Mem. and Order on Def. Town & Country Cadillac's Mot. for Summ. J., filing 99, at 11-12.)

The plaintiff suggests that I did not take into account the effects of mitigating measures that consist of lifestyle changes because my "rule requires" a distinction between "mitigating measures which consist of mandatory lifestyle changes and other mitigating measures." (Pl.'s Br. at 6.) Any careful reading of the Memorandum and Order on Defendant Town and Country Cadillac's Motion for Summary Judgment should demonstrate that this argument is meritless. In his brief, the plaintiff referred me to "12(N)II, 60-61,66-67," in support of his argument that his family and social functioning have been substantially limited. (See Pl.'s Response to Def. Town and Country's Mot. for Summ. J., filing 62, at 8.) I studied those paragraphs and explained why the evidence referred to therein did not "support a finding that the plaintiff's alcoholism in remission substantially affected his family and social functioning." (See Mem. and Order on Def. Town & Country Cadillac's Mot. for Summ. J., filing 99, at 12.) I did not decline to consider the plaintiff's evidence because of some per se "rule" against evidence of "lifestyle changes." (See id.) Instead, I noted that the plaintiff must spend time "away from his family and friends each month for alcohol related support groups" and that he must "avoid or demonstrate caution in social settings where alcohol is present," and I found his evidence insufficient to support a jury finding that the plaintiff was substantially limited in a major life activity. (Id.) These are the negative effects associated with the mitigating measures that the plaintiff must undertake to continue to abstain from alcohol use, and pursuant to the teachings of Sutton v. United Airlines, 527 U.S. 471, 482-84 (1999), I plainly considered them. (See Mem. and Order on Def. Town & Country Cadillac's Mot. for Summ. J., filing 99, at 12.) The plaintiff's argument that I failed to do so is not well taken.[3] Similarly, on page 13 of the Memorandum and Order on Defendant Town and Country Cadillac's Motion for Summary Judgment, I did not hold that pursuant to Soileau, the evidence provided by the plaintiff could not be considered because it concerned lifestyle changes. (See Mem. and Order on Def. Town & Country Cadillac's Mot. for Summ. J., filing 99, at 13.) Instead, referring to Soileau, I considered the plaintiff's evidence that he had to "screen everything he ingests," and I found it insufficient to support a finding that the plaintiff was substantially limited in a major life activity. (See id.)

In short, Soileau was not used in the Memorandum and Order on Defendant Town and

---

[3]Nor is the plaintiff's belated attempt to cite to additional evidence well taken. (Compare Pl.'s Br. at 6 (citing "Plf. 56(b)(3)(B), ¶ 7-10, 16-38") with Pl.'s Response to Def. Town and Country's Mot. for Summ. J., filing 62, at 8 (citing "12(N)II, 60-61,66-67").) The plaintiff may not use a motion to amend the judgment to make arguments that he should have made previously. See Russell v. Delco Remy Division of General Motors Corp., 51 F.3d 746, 749 (7th Cir. 1995); Moro v. Shell Oil Co., 91 F.3d 872, 876 (7th Cir. 1996). If the plaintiff felt that paragraphs 7-10 and 16-38 of his statement of facts should have been considered in support of his argument, he should have referred to them in his response brief.

Country Cadillac's Motion for Summary Judgment as the basis for a *per se* rule that prevented the plaintiff's evidence of the negative effects of maintaining sobriety from being considered in violation of Sutton. On the contrary, the plaintiff's evidence was considered, and I determined that it was insufficient to raise a triable issue as to whether the plaintiff was substantially limited in a major life activity. (See Mem. and Order on Def. Town & Country Cadillac's Mot. for Summ. J., filing 99, at 7-13.)

If a plaintiff attempting to establish the existence of a disability were required to show only that he had to change his lifestyle as a result of a physical or mental impairment, the outcome of the motion for summary judgment would have been different, for the plaintiff has indeed put forth evidence that he has had to change elements of his lifestyle. The references to Soileau in the Memorandum and Order on Defendant Town and Country Cadillac's Motion for Summary Judgment at pages 12 and 13 were meant to emphasize that to establish that he was disabled within the meaning of the ADA, a plaintiff must do more than show that he had to alter his lifestyle to mitigate his impairment. Instead, a plaintiff must show that he is substantially limited in a major life activity, which means that he is either unable to perform a major life activity that a person in the general population can perform, or that he is significantly restricted as to the condition, manner, or duration under which he could perform a given major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that activity. See Sutton v. United Airlines, 527 U.S. 471, 479-80 (1999) (quoting 29 C.F.R. § 1630.2(g)-(j)). I found that the plaintiff's evidence of lifestyle changes that accompanied the mitigation of his impairment was insufficient to meet this test, and this - - not some *per se* "rule" derived from Soileau - - was the basis for my decision that the plaintiff was not disabled within the meaning of the ADA during a time when his alcoholism was mitigated by abstinence.

In passing, I note that the plaintiff refers me to Rowles v. Automated Production Systems, Inc., 92 F. Supp. 2d 424 (M.D. Pa. 2000), in support of his argument that lifestyle changes can establish that a person is substantially limited.[4] As I have explained, I agree that a person may be

---

[4]In Rowles, the court did not identify a major life activity that was substantially limited by the plaintiff's lifestyle changes. See Rowles v. Automated Production Systems, Inc., 92 F. Supp. 2d at 428-29. Instead, the court noted the following "limitations on [the plaintiff's] daily activities: (1) he must limit his exposure to stress and fatigue--both of which precipitate seizure activity; (2) he cannot work excessively long hours; (3) he must eat meals at regularly scheduled intervals; (4) he must have at least eight hours of sleep each night; and (5) he is less able to handle the flu, as vomiting can prevent him from getting enough of his medication and thus precipitate seizure activity." Id. at 429 (footnote omitted). Certain of these individual "limitations" appear to be relevant to certain individual major life activities identified by the court, such as "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." Id. at 428. For example, "he cannot work excessively long hours" is relevant to the major life activity of working. However, the court merely states that "the precautions he must take (in addition to or because of his medication) in order to reduce the

able to provide evidence of lifestyle changes that are sufficient to support a finding that he is substantially limited in a major life activity. In this case, however, the plaintiff was unable to do so. Therefore, <u>Rowles</u> is not helpful to the plaintiff's position.

2.    Ignoring "Uncontested Information About the Severity of Limitations in Early Recovery"

The plaintiff claims that I erred in granting summary judgment on the plaintiff's discrimination claim because I "ignored uncontested information about the severity of limitations in early recovery, choosing to focus on Plaintiff's statements concerning longer-term implications of his mitigating measures." (Pl.'s Br. at 8-9.) Specifically, the plaintiff argues:

> The Court stated that "his family time is limited by the one to two hours a day that he must devote to maintaining sobriety during recovery." (Order on Motion Summary Judgment. p. 8, 11). This is incorrect. In early recovery, the time at issue, it is uncontested that recovery activities took 4-5 hours per day. Plf. 56(b)(3)(B), ¶ 67. This was in addition to 8 to 12 hour days at work. (Ex. 6, McKay Affidavit, ¶ 57). Given 7-8 hours of sleep, basic human functions, and even minimal travel time to and from work, this leaves no time for family or social functioning.

(Pl.'s Br. at 9.) The critical flaw in the plaintiff's argument is that he failed to refer me to any evidence that his recovery activities took 4-5 hours per day. Paragraph 67 of the Plaintiff's Statement of Additional Facts Pursuant to Local Rule 12(N), filing 63, (referred to here by the plaintiff as Plf. 56(b)(3)(B), ¶ 67) does indeed state that "[i]n the early stages of recovery, such as in June of 1996, he must devote more like 4-5 hours a day on support/sobriety issues." However, this statement is not supported by a citation to the record, and therefore it is a nullity. <u>See Malec v. Sanford</u>, 191 F.R.D. 581, 584 (N.D. Ill. 2000).

The plaintiff also argues that "it is also uncontested that at this time, due to his alcoholism, Plaintiff had no friends outside of work because alcohol was taking up most of his time until June 1, when recovery began taking it up. Ex. 6, ¶ 24." Exhibit 6 accompanying the

---

likelihood of seizures substantially limits him," while neglecting to identify which major life activity is so limited. <u>Id.</u> at 429. Furthermore, the court admits that it "is mindful that taken individually, the limitations Plaintiff claims that he experiences in connection with his condition may not be particularly significant," but claims that, "viewed in their entirety, one could reasonably conclude that such limitations are substantial." <u>Id.</u> To the extent that the plaintiff argues that <u>Rowles</u> supports his argument that I erred in determining that the plaintiff's lifestyle limitations were insufficient to amount to a substantial limitation of a major life activity (<u>see</u> Pl.'s Br. at 7), his argument is rejected. Respectfully, I do not believe that it is proper to combine these lifestyle changes, which are admittedly insufficient when considered individually and which appear not to affect a single type of activity, in order to find an unspecified "substantial limitation."

plaintiff's brief is a copy of the plaintiff's affidavit submitted in opposition to the defendant's motion for summary judgment, which may also be found in the Plaintiff's Addendum of Exhibits, filing 59, at Exhibit 1. Paragraph 24 of this exhibit states in its entirety, "Because of my alcoholism, I had no friends outside of work. There was no time because alcohol was taking up most of my non-work time." (Pl.'s Br., Ex. 6, ¶ 24.) This statement says nothing about whether the plaintiff "had no friends outside of work" due to the time spent in recovery. (Pl.'s Br. at 9.) Indeed, the paragraph states that alcohol, not recovery efforts, caused the plaintiff to have no friends outside of work. (See Pl.'s Br., Ex. 6, ¶ 24.)

Both of the plaintiff's arguments that I "ignored uncontroverted testimony concerning the impact of mitigating measures on Plaintiff's life" (Pl.'s Br. at 8) do not support amending the judgment to allow the plaintiff's discrimination claim to proceed.

3.     McAlindin v. County of San Diego

Next, the plaintiff argues that my reliance on McAlindin v. County of San Diego, 193 F.3d 1226 (9th Cir. 1999) in the Memorandum and Order on Defendant Town and Country Cadillac's Motion for Summary Judgment was "illogical and against the individualized assessment required of the ADA." (Pl.'s Br. at 9.)

At Part III.B.1 of this memorandum, I quoted the plaintiff's entire argument that he was limited in the "major life activities" of "social contacts and family relations." (See also Pl.'s Response to Def. Town and Country's Mot. for Summ. J., filing 62, at 8.) I also noted that the cases cited by the plaintiff in support of his argument were impertinent, but that the defendant provided me with a citation Soileau, a case relevant to the question of whether family and social functioning is a major life activity for the purposes of the ADA. (See supra Part III.B.1.) As I discussed above, Soileau stands for the proposition that "the ability to interact with others" was not a major life activity at all. Solieau v. Guilford of Maine, Inc., 928 F. Supp. at 48. (See also supra Part III.B.1.) Although the plaintiff referred me to no relevant law in support of his assertion that social functioning should be considered as a major life activity, I located and reviewed McAlindin v. County of San Diego, 193 F.3d 1226 (9th Cir. 1999). Based in part upon the Ninth Circuit's reasoning in that case, I decided to reject the court's conclusion in Soileau that the "inability to interact with others does not implicate a major life activity." Solieau v. Guilford of Maine, Inc., 928 F. Supp. at 48. (See Mem. and Order on Def. Town & Country Cadillac's Mot. for Summ. J., filing 99, at 5-6.)

After I decided that I would consider family and social functioning to be a major life activity in general, I then proceeded to determine "whether the plaintiff was significantly restricted as to the condition, manner, or duration under which he could perform family or social functions as compared to the condition, manner, or duration under which the average person in the general population can perform family or social functioning." (Mem. and Order on Def. Town & Country Cadillac's Mot. for Summ. J., filing 99, at 11.) As I have already noted, the plaintiff provided me with no relevant law to guide this determination. Based upon my own

research, I found that it was helpful to refer to McAlindin, "where the court dealt with precisely this issue." (Mem. and Order on Def. Town & Country Cadillac's Mot. for Summ. J., filing 99, at 11.) Citing McAlindin, I concluded that "the evidence does not show that the plaintiff's relations with others were characterized by severe problems on a regular basis," and noted that the limitations on the plaintiff's ability to interact with others did "not remotely approach that of McAlindin." (Id. at 12.) Since the plaintiff provided no alternate legal standard, I do not find his argument that my reliance upon McAlindin was "illogical" to be compelling.

The plaintiff complains that in McAlindin, the plaintiff suffered from an "impairment of mental illness," and it would be "illogical and against the individualized assessment required of the ADA to require psychiatric manifestations or disturbances before ruling that the major life activity of 'interacting with others' is substantially limited." (Pl.'s Br. at 9.) The plaintiff's suggestion that I did not perform an "individualized assessment" is without merit, as a review of pages 7-9 and 11-12 of the Memorandum and Order on Defendant Town and Country Cadillac's Motion for Summary Judgment demonstrates. Also without merit is the plaintiff's claim that by referring to McAlindin for guidance, I erroneously "require[d]" the plaintiff to demonstrate "psychiatric manifestations or disturbances" or "mental illness." (Pl.'s Br. at 9.) It is true that McAlindin involved a plaintiff with mental illness, and that the court referred to "psychiatric" guidelines to develop its test for determining whether a limitation of the ability to interact with others was substantial. See McAlindin v. County of San Diego, 193 F.3d at 1230, 1235. However, even if I assume that the plaintiff's impairment is not a mental disorder and that his case is therefore distinguishable from McAlindin,[5] I do not believe that requiring a plaintiff who claims to be substantially limited in his ability to function socially to provide evidence that his "relations with others were characterized on a regular basis by severe problems," as opposed to "mere trouble getting along with coworkers," entails a latent requirement that the plaintiff demonstrate that he is psychologically impaired. See McAlindin v. County of San Diego, 193 F.3d at 1235. (See also Mem. and Order on Def. Town & Country Cadillac's Mot. for Summ. J., filing 99, at 12.) The plaintiff's argument that the judgment must be amended due to my references to McAlindin in the Memorandum and Order on Defendant Town and Country Cadillac's Motion for Summary Judgment is rejected.

---

[5]It is by no means obvious that the plaintiff's alcoholism is not properly "classified" as a psychological impairment. On the contrary, the plaintiff's suggestion that his "disease, as with many other impairments, is not a mental illness" (Pl.'s Reply Br. at 15) seems to contradict much of his own evidence. As I considered Town and Country Cadillac's Motion for Summary Judgment, I saw no need to label the plaintiff's alcoholism as either a "physical" or "mental" impairment. (See Mem. and Order on Def. Town & Country Cadillac's Mot. for Summ. J., filing 99, at 4 n.3.) I shall continue to avoid doing so. However, I note that the plaintiff attempted to introduce evidence of past alcoholism treatment he received from a clinical social worker (see filings 64, 149, 150), and that the plaintiff's own expert diagnosed the plaintiff's alcoholism using the Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition. (See Pl.'s Addendum of Exhibits, filing 59, Ex. 2, Angres Report at 3.)

4.    "Weak" Statements in the Plaintiff's Affidavit

The plaintiff next shifts his focus to the Memorandum and Order on Defendant's Motion to Strike the Affidavit of A. Robert McKay, filing 98. He argues:

> The Court claimed that the Plaintiff did not provide specific facts on how his life had changed in recovery, and that the statements given were "too weak to defeat a motion for summary judgment".[sic] (Order on Affidavit, p. 14). This ignores that the Plaintiff does provide specific facts (Ex. 6, ¶ 38-44), several of which are apparently later recognized by the Court. (Order on Motion [sic] Summary Judgment, p. 8). The Court's statement indicates the weighing the Supreme Court has stated must be left to the jury. While the Court may find the statements weak, such statements are sufficient to defeat summary judgment where, as here, Defendant has deposed Plaintiff and her [sic] expert and has offered no evidence to contradict these statements.

(Pl.'s Br. at 10 (citations omitted).) The plaintiff repeatedly refers to "statements" that I labeled "too weak to defeat a motion for summary judgment," but he has referred me to only one statement in particular. (See Pl.'s Br. at 10.) This statement appears at paragraph 37 of the Affidavit of A. Robert McKay. (See Pl.'s Addendum of Exhibits, filing 59, Ex. 1, McKay Aff. ¶ 37.) The defendant moved to strike the first sentence of this paragraph, which stated, "To stay in recovery, my daily life has changed significantly." (Id. See also Mem. and Order on Def.'s Mot. to Strike the Aff. of A. Robert McKay, filing 98, at 14.) I agreed with the defendant's characterization of this statement as general, vague, and non-specific because the statement did not contain facts showing how the plaintiff's life changed in recovery. (See Mem. and Order on Def.'s Mot. to Strike the Aff. of A. Robert McKay, filing 98, at 14.) However, I found that this characterization provided no basis for striking the sentence. (See id.) Although the sentence was not stricken, I noted that Federal Rule of Civil Procedure 56(e) requires the plaintiff to come forward with facts in opposition to the defendant's motion for summary judgment. (See id.) Since the sentence included no facts, I noted that it was "too weak to defeat a motion for summary judgment." (Id.)

The plaintiff's argument seems to be that my comment about a statement that was *not stricken* from his affidavit suggests that I weighed evidence as I considered a separate motion (i.e., Town & Country's Motion for Summary Judgment), even though the plaintiff seems to admit that I did consider his evidence of specific facts when I analyzed the defendant's summary judgment motion. (See Pl.'s Br. at 10 ("This ignores that the Plaintiff does provide specific facts (Ex. 6, ¶ 38-44), *several of which are apparently later recognized by the Court*.") (emphasis added).) This argument simply does not support amending the judgment to allow the plaintiff's discrimination claim to proceed. I gave the vague statement due consideration and then proceeded to study the actual facts submitted by the plaintiff. This was not erroneous.

5.    The Plaintiff's Remarriage

12

Next, the plaintiff claims that I erroneously "relied" upon evidence that the plaintiff remarried in support of my conclusion that the plaintiff's alcoholism in remission did not substantially limit his family or social functioning. Although it is not accurate to suggest that this conclusion was based solely on the fact that the plaintiff remarried, it is true that I referred to this fact in the Memorandum and Order on Defendant Town and Country Cadillac's Motion for Summary Judgment. (See Mem. and Order on Def. Town & Country Cadillac's Mot. for Summ. J., filing 99, at 12.)

The plaintiff claims that his alcoholism must be viewed at the time of the adverse employment actions against him (June 1996), and that the plaintiff was not remarried until "significantly later." (Pl.'s Br. at 10.)[6] Therefore, the plaintiff argues that I should not have considered the fact that he has remarried in order to determine whether he was substantially limited in a major life activity. In support of this argument, the plaintiff refers me to Hershey v. Praxair, Inc., 969 F. Supp. 429, 433 (S.D. Tex. 1997), wherein the court stated,

> Defendant contends that Plaintiff does not have a disability under the ADA because he now leads an apparently normal life and drives, walks, sits in class, and takes his kids to Astroworld. The Court finds, however, that the status of Plaintiff's physical impairment must be viewed at the time of his discharge, when the allegedly discriminatory act took place. *Plaintiff's present physical condition and capabilities are of course relevant in determining whether Plaintiff had a disability when he was discharged because it may help demonstrate that the nature, severity, and duration of Plaintiff's impairment were not significant enough to qualify it as a disability.*

Hershey v. Praxair, Inc., 969 F. Supp. 429, 433 (S.D. Tex. 1997) (emphasis added). The plaintiff's own case clearly suggests that it was appropriate for me to consider the plaintiff's later remarriage in order to determine whether he suffered from a substantial limitation in family or social functioning at the time of the adverse employment action. I therefore reject the plaintiff's argument.

6.  The Plaintiff's Ability to Care for Himself

The plaintiff claims that I "ignored uncontested evidence concerning Plaintiff's ability to care for himself, limiting it to a need to avoid foods and other products [containing][7] alcohol." (Pl.'s Br. at 11.) Specifically, the plaintiff argues that I failed to consider evidence that he must

---

[6]Evidence indicates that the plaintiff remarried on October 24, 1998. (See Def.'s Addendum of Exhibits, Part 1 of 4, filing 49, Ex. B, McKay Dep. at 72:12-17.)

[7]The plaintiff states "concerning," but I shall assume he meant to state "containing." (See Pl.'s Br. at 11.)

limit his use of prescription drugs. (See id.) The plaintiff claims that although I "held that Plaintiff himself could not establish foundation for any limitations on his use of prescription drugs due to his alcoholism . . . Dr. Daniel Angres, Plaintiff's expert, provided the same information." (Pl.'s Br. at 11.) The plaintiff did not articulate his argument clearly, but I assume he believes that it was erroneous for me not to consider Dr. Angres's statements when determining whether the plaintiff was substantially limited in his ability to care for himself. For argument's sake, I shall assume that the plaintiff is correct that I did not consider the plaintiff's evidence that he must limit his use of prescription drugs.

In his response to the defendant's motion for summary judgment, the plaintiff argued, "Mr. McKay has also produced evidence he is substantially limited in the daily activity of caring for himself. 12(N)II, 61-67." (Pl.'s Response to Def. Town and Country's Mot. for Summ. J., filing 62, at 9.) He did not refer to paragraphs 3-10 or 16-45 of his statement of facts, which he now claims contain information relevant to his argument. (See Pl.'s Br. at 11.) The plaintiff cannot claim that I erred by failing to consider evidence that he himself did not refer to in his argument in response to the defendant's summary judgment motion, for the plaintiff could have referred me to that evidence previously. See Russell v. Delco Remy Division of General Motors Corp., 51 F.3d 746, 749 (7th Cir. 1995); Moro v. Shell Oil Co., 91 F.3d 872, 876 (7th Cir. 1996).

Paragraph 66, which is among the paragraphs that actually were cited by the plaintiff in his response brief, states:

> 66.  In order to maintain his recovery, Mr. McKay must restrict and significantly change daily activities
>
> a)  Mr. McKay must avoid alcohol in any form to avoid relapse. This requires constant scrutiny of any substance ingested, including food, drink, medicines, personal care products, etc. Mr. McKay must either forgo products containing any alcohol or locate alternatives, if such are available. (Exh. 1, McKay Affidavit, ¶ 38). He must also inquire about any dish, dessert, or drink to determine if there is alcohol in it. This requires embarrassing inquires [sic] at restaurants and private gatherings.

("Pl.'s Statement of Additional Facts Pursuant to Local Rule 12(N) - 12(N)(II)," filing 63, ¶ 66.) Paragraph 66 contains only a single citation to one paragraph of the plaintiff's affidavit. (See id.) That lone paragraph includes a general statement that the plaintiff must "avoid alcohol in any form," but then proceeds to discuss only cooked dishes. (See Pl.'s Addendum of Exhibits, filing 59, Ex. 1, McKay Aff. ¶ 38.) Thus, it appears that a large portion of paragraph 66 is a nullity, unsupported by appropriate citations to the record as required by Local Rule 56.1. See Malec v. Sanford, 191 F.R.D. 581, 584 (N.D. Ill. 2000).

The plaintiff's need to avoid non-prescription health care products is discussed in

paragraph 39 of his affidavit, and his need to "be careful" with prescription drugs is discussed in paragraph 40, which, as the plaintiff duly notes, has been stricken. (See Pl.'s Addendum of Exhibits, filing 59, Ex. 1, McKay Aff. ¶¶ 39-40; Mem. and Order on Def.'s Mot. to Strike the Aff. of A. Robert McKay, filing 98, at 16.) However, in paragraph 66 of his statement of facts, the plaintiff does not refer to either paragraph 39 or 40 of his affidavit. (See "Pl.'s Statement of Additional Facts Pursuant to Local Rule 12(N) - 12(N)(II)," filing 63, ¶ 66.) In fact, none of the paragraphs cited by the plaintiff in support of his argument that he was substantially limited in his ability to care for himself (i.e., paragraphs 61-67) include citations to *any evidence* concerning prescription drugs. This means that the plaintiff never referred me to Dr. Angres's evidence about the plaintiff's need to limit his use of certain prescription drugs, although the plaintiff now claims that I erred by failing to recognize that evidence.

7.    Reproduction

Next, the plaintiff argues that my "ruling that Mr. McKay's reproduction could not possibly be limited by his disability"[8] was erroneous for several reasons. (Pl.'s Br. at 11.) First, the plaintiff claims that I "ignored uncontested evidence from Dr. Angres that there is a genetic link to alcoholism." (Id.) The plaintiff claims that Dr. Angres's evidence was set forth in paragraphs 7-10 and 68 of the plaintiff's statement of facts. (Pl.'s Br. at 11.) However, in his response to the defendant's summary judgment motion, the plaintiff did not refer me to paragraphs 7-10 of his statement of facts. (Pl.'s Response to Def. Town and Country's Mot. for Summ. J., filing 62, at 8.) For the reasons discussed immediately above in Part III.B.6, I shall disregard the plaintiff's belated reference to those paragraphs. See Moro v. Shell Oil Co., 91 F.3d 872, 876 (7th Cir. 1996); Russell v. Delco Remy Division of General Motors Corp., 51 F.3d 746, 749 (7th Cir. 1995); Schoeneck v. Chicago National League Ball Club, Inc., 867 F. Supp. 696, 701 n.1 (N.D. Ill. 1994).

Since paragraphs 7-10 were not referenced in the plaintiff's brief, only paragraph 68 of the plaintiff's statement of facts remains to be considered. (See Pl.'s Response to Def. Town and Country's Mot. for Summ. J., filing 62, at 8.) This paragraph states, "There is a substantiated risk that children of alcoholics will become alcoholics. (Def. Exh. H, Angres dep, p. 31, ln. 7-23)."[9] ("Pl.'s Statement of Additional Facts Pursuant to Local Rule 12(N) - 12(N)(II)," filing 63,

---

[8]The plaintiff mischaracterizes my "ruling": I did not find that the plaintiff's "reproduction could not possibly be limited," but I did conclude that the "evidence is insufficient to support a finding that the plaintiff is significantly restricted as to the condition, manner, or duration in which he can reproduce when his alcoholism is in remission." (See Mem. and Order on Def. Town & Country Cadillac's Mot. for Summ. J., filing 99, at 11.)

[9]Paragraph 68 continues, but the remainder of the paragraph is based upon paragraph 44 of the Affidavit of A. Robert McKay, the bulk of which has been stricken. (See "Pl.'s Statement of Additional Facts Pursuant to Local Rule 12(N) - 12(N)(II)," filing 63, ¶ 68; Mem. and Order on Def.'s Mot. to Strike the Aff. of A. Robert McKay, filing 98, at 19.) The portions of

¶ 68.) The evidence supporting this statement of fact consists solely of the following testimony by Dr. Angres:

> [Q.]   In reviewing the past history and Mr. McKay's history to you that his father was an alcoholic, in the past history sense there, what relationship from a scientific standpoint do you ascribe to the child of an alcoholic becoming an alcoholic?
> A.   I'm aware of several studies indicating that the - - in particular the male offspring of an alcoholic father has a higher rate of alcoholism.
> Q.   What about the female offspring of an alcoholic father?
> A.   That actually was also substantiated, but only more recently. Approximately, as I recall, it was in the last six or seven years that it had been noted that women are also at higher risk if either or both parents are alcoholic. But there have been historically many studies to indicate the male offspring of an alcoholic father as being at particularly higher risk.

(Def.'s Addendum of Exhibits, Part 3 of 4, filing 49, Ex. H, Angres Dep. at 31:7-23.)

There is no mention of a "genetic link to alcoholism" (Pl.'s Br. at 11) anywhere in the evidence that was properly supported and cited by the plaintiff. In the evidence referenced by the plaintiff in his response to the defendant's motion for summary judgment, Dr. Angres did not explain the cause of the "higher rate of alcoholism" found among the offspring of alcoholic parents. (See Def.'s Addendum of Exhibits, Part 3 of 4, filing 49, Ex. H, Angres Dep. at 31:7-23.) Perhaps the "higher risk" is indeed attributable to a "genetic link," or perhaps it is attributable to some other factor, such as the child's observation of alcoholic behavior by the parent. The plaintiff's evidence simply did not specify a cause. Therefore, the plaintiff's argument that I "ignored uncontested evidence from Dr. Angres that there is a genetic link to alcoholism" is unsupported.

I did, however, consider Dr. Angres's evidence concerning the higher risk for alcoholism, and I concluded that it was insufficient to create a genuine issue that the plaintiff was substantially limited in the major life activity of reproduction. (See Mem. and Order on Def. Town & Country Cadillac's Mot. for Summ. J., filing 99, at 10.) The plaintiff relied on Bragdon v. Abbott, 524 U.S. 624 (1998) in support of his argument that he was substantially limited in the activity of reproduction. (See Mem. and Order on Def. Town & Country Cadillac's Mot. for Summ. J., filing 99, at 9-10). In Bragdon, the Court discussed the following evidence that the plaintiff's reproduction was substantially limited:

---

paragraph 44 of the affidavit that were not stricken are inadequate to support paragraph 68 of the plaintiff's statement of facts. (Compare Mem. and Order on Def.'s Mot. to Strike the Aff. of A. Robert McKay, filing 98, at 19 with "Pl.'s Statement of Additional Facts Pursuant to Local Rule 12(N) - 12(N)(II)," filing 63, ¶ 68.)

Our evaluation of the medical evidence leads us to conclude that respondent's infection substantially limited her ability to reproduce in two independent ways. First, a woman infected with HIV who tries to conceive a child imposes on the man a significant risk of becoming infected. The cumulative results of 13 studies collected in a 1994 textbook on AIDS indicates that 20% of male partners of women with HIV became HIV-positive themselves, with a majority of the studies finding a statistically significant risk of infection. Osmond & Padian, Sexual Transmission of HIV, in AIDS Knowledge Base 1.9-8, and tbl. 2; see also Haverkos & Battjes, Female-to-Male Transmission of HIV, 268 JAMA 1855, 1856, tbl. (1992) (cumulative results of 16 studies indicated 25% risk of female-to-male transmission). (Studies report a similar, if not more severe, risk of male-to- female transmission. See, e.g., Osmond & Padian, AIDS Knowledge Base 1.9-3, tbl. 1, 1.9-6 to 1.9-7.)

Second, an infected woman risks infecting her child during gestation and childbirth, i.e., perinatal transmission. Petitioner concedes that women infected with HIV face about a 25% risk of transmitting the virus to their children. 107 F.3d, at 942, 912 F.Supp., at 587, n. 6. Published reports available in 1994 confirm the accuracy of this statistic. Report of a Consensus Workshop, Maternal Factors Involved in Mother-to-Child Transmission of HIV-1, 5 J. Acquired Immune Deficiency Syndromes 1019, 1020 (1992) (collecting 13 studies placing risk between 14% and 40%, with most studies falling within the 25% to 30% range); Connor et al., Reduction of Maternal-Infant Transmission of Human Immunodeficiency Virus Type 1 with Zidovudine Treatment, 331 New England J. Med. 1173, 1176 (1994) (placing risk at 25.5%); see also Staprans & Feinberg, Medical Management of AIDS 32 (studies report 13% to 45% risk of infection, with average of approximately 25%).

. . . .

The Act addresses substantial limitations on major life activities, not utter inabilities. Conception and childbirth are not impossible for an HIV victim but, without doubt, are dangerous to the public health. This meets the definition of a substantial limitation. The decision to reproduce carries economic and legal consequences as well. There are added costs for antiretroviral therapy, supplemental insurance, and long-term health care for the child who must be examined and, tragic to think, treated for the infection. The laws of some States, moreover, forbid persons infected with HIV to have sex with others, regardless of consent. Iowa Code §§ 139.1, 139.31 (1997); Md. Health Code Ann. § 18-601.1(a) (1994); Mont.Code Ann. §§ 50-18-101, 50-18-112 (1997); Utah Code Ann. § 26-6- 3.5(3) (Supp.1997); id., § 26-6-5 (1995); Wash. Rev.Code § 9A.36.011(1)(b) (Supp.1998); see also N.D. Cent.Code § 12.1-20-17 (1997).

Bragdon v. Abbott, 524 U.S. 624, 639-41 (1998). After discussing Bragdon in the Memorandum and Order on Defendant Town & Country Cadillac's Motion for Summary Judgment, I concluded:

> The plaintiff's case is distinguishable from Bragdon. There is no evidence that persons with alcoholism suffer the same legal, economic, and public health issues as a person with HIV. There is also no evidence of a specific risk of transmission of alcoholism to children that would be analogous to the 25% risk of transmitting HIV to a child via his or her mother.

(Mem. and Order on Def. Town & Country Cadillac's Mot. for Summ. J., filing 99, at 10.) The plaintiff argues that he is not required to prove the same facts that existed in Bragdon. (See Pl.'s Br. at 12.) Above I have reproduced the entirety of the evidence properly cited in the plaintiff's brief regarding the consequences of reproduction for the plaintiff (i.e., Dr. Angres's testimony concerning an unexplained and unquantified "higher risk" of alcoholism among children with an alcoholic parent). I do not believe that my conclusion that this vague evidence was insufficient to create a genuine issue that the plaintiff was substantially limited in reproduction was erroneous.

In addition, in the Memorandum and Order on Defendant Town & Country Cadillac's Motion for Summary Judgment I noted that "in the present case evidence regarding the transmission rate of alcoholism from parent to child . . . would be irrelevant." (Mem. and Order on Def. Town & Country Cadillac's Mot. for Summ. J., filing 99, at 10.) I reached this conclusion in light of evidence that the plaintiff conceived two daughters "well after the plaintiff established his pattern of alcohol abuse," which to me suggested "that the effect of [the plaintiff's] impairment on his reproduction has not been limiting." (Id.) Although I am mindful of the Supreme Court's teaching that the disability determination "does not turn on personal choice," see Bragdon v. Abbott, 524 U.S. at 641, I believe that statement is meant to emphasize that a person who can physically reproduce but chooses not to in the face of "significant limitations" cannot be said to fail to meet the definition of substantial limitation merely because their decision to reproduce was, in a sense, a personal choice. See Bragdon v. Abbott, 524 U.S. at 641 ("When significant limitations result from the impairment, the definition is met even if the difficulties are not insurmountable."). In Bragdon, there was "unchallenged" testimony from the respondent that "her HIV infection controlled her decision not to have a child." Bragdon v. Abbott, 524 U.S. at 641. The plaintiff in this case cannot make a similar claim, since the undisputed evidence showed that the plaintiff had two children after the onset of his pattern of alcohol abuse.

The plaintiff argues that it was "incorrect[]" for me to rely upon the fact that he had two children "to infer that his reproduction has not been limited." (Pl.'s Br. at 11.) The plaintiff claims that I must have relied "on information or materials beyond the record or [drew] inferences against the Plaintiff," because "[t]here is absolutely no evidence in the record that his two daughters were 'conceived and born well after the plaintiff established his pattern of alcohol

18

abuse.'" (Id. (quoting Mem. and Order on Def. Town & Country Cadillac's Mot. for Summ. J., filing 99, at 10).) I do not know what prompts such a statement. The evidence that the plaintiff's children were conceived and born well after he established his pattern of alcohol abuse not only exists in the record, but comes directly from the plaintiff himself. The plaintiff's affidavit states the following:

> 3.     I had my first drink at age 7, in my family's home. I became intoxicated.
> 4.     While in high school, I drank intermittently to the point of intoxication.
> 5.     I began drinking daily at roughly age 25, in 1976.
> . . . .
> 7.     My pattern was that I would drink at home, alone. I would drink until I was under the influence on workdays (generally weekdays). On non-workdays (generally weekends), I would drink to intoxication. I did this whenever I was in an alcoholic state.
> 8.     Except for periods of recovery of two months in 1988, from 1989 to 1993, and since May 31, 1996, I have followed this pattern.

(Pl.'s Addendum of Exhibits, filing 59, Ex. 1, McKay Aff. ¶¶ 3-5, 7-8.) The plaintiff's deposition, which is dated February 15, 1999, includes testimony that the plaintiff's eldest daughter was eighteen and his youngest was sixteen. (See Def.'s Addendum of Exhibits, Part 1 of 4, filing 49, Ex. B, McKay Dep. at 71:19-72:2.) The plaintiff's evidence shows that he began his daily drinking pattern in 1976, and that both of his daughters were born between February 16, 1980, and February 15, 1983. Therefore, the evidence is that "the plaintiff has two daughters[] who were conceived and born well after the plaintiff established his pattern of alcohol abuse," (Mem. and Order on Def. Town & Country Cadillac's Mot. for Summ. J., filing 99, at 10). I relied on that record only.

      The plaintiff also claims that because his children were not born during or after June 1996, when the alleged adverse employment actions were occurring, their existence is not relevant to whether he was substantially limited in a major life activity at that time. (See Pl.'s Br. at 11-12.)

      The plaintiff has referred me to no law in support of his argument that I cannot consider evidence of his reproductive activities prior to the time of the alleged adverse employment actions in order to determine whether his reproduction has been limited by his impairment. In fact, it seems to me that there is precedent contrary to the plaintiff's position. In Cross v. Ryder Integrated Logistics, 140 F. Supp. 2d 933 (N.D. Ill. 2001), the plaintiff, who was a truck driver employed by the defendant, claimed that he was substantially limited in the major life activity of working. Cross v. Ryder Integrated Logistics, 140 F. Supp. 2d at 935, 940. In determining that the plaintiff was not substantially limited in his ability to work, the court considered evidence that the plaintiff was already working as a truck driver before the effective date of his termination by the defendant. See id. at 939, 940. It seems that courts have looked beyond the time period during which adverse employment actions are alleged to have occurred when determining

whether an impairment amounts to a substantial limitation to a major life activity. See id.; see also Hershey v. Praxair, Inc., 969 F. Supp. 429, 433 (S.D. Tex. 1997) ("Plaintiff's present physical condition and capabilities are of course relevant in determining whether Plaintiff had a disability when he was discharged because it may help demonstrate that the nature, severity, and duration of Plaintiff's impairment were not significant enough to qualify it as a disability."). This determination is distinct from the Sutton requirement that the disability be evaluated with due consideration to mitigating measures, which was a basis for excluding a large portion of the plaintiff's evidence in this case. (See, e.g., Mem. and Order on Def. Town & Country Cadillac's Mot. for Summ. J., filing 99, at 8 ("Still other portions of the evidence I find to be irrelevant, because they describe problems faced by the plaintiff while in a period of active alcoholism.").)

In addition, I must reemphasize that even if it were erroneous for me to take note of the fact that the plaintiff fathered two children, there was insufficient evidence to create a genuine issue that the plaintiff was substantially limited in the major life activity of reproduction. As I discussed above, on this point the only evidence that was properly supported and referenced in the plaintiff's brief consisted of Dr. Angres's non-specific testimony, which I have quoted, compared to the evidence set forth in Bragdon, and found to be insufficient to raise a triable issue.

For these reasons I reject the plaintiff's argument that errors in the analysis of the plaintiff's "reproduction" evidence warrant amending the judgment.

## 8. Drawing Inferences Against the Plaintiff

The plaintiff argues that "there are several instances where the Court drew inferences against Plaintiff and in favor of Defendant . . . ." (Pl.'s Br. at 8. See also id. at 12.) In connection with this argument, the plaintiff combines two very distinct contentions: one very general, the other more focused. The plaintiff's general argument states that "[i]n several places, the Court indicated that further information was necessary on issues, which further information would apparently affect its determination about whether Plaintiff was disabled." (Pl.'s Br. at 12.) "If additional facts are necessary on an issue fairly raised by the evidence, they are to be adduced at trial, not decided against the Plaintiff on summary judgment." (Id. at 13 (citing Hershey v. Praxair, Inc., 969 F. Supp. 429, 433 (S.D. Tex. 1997)).) The plaintiff's more focused argument, which is nestled in the midst of his general argument, states that I ignored evidence of a "connection between Plaintiff's substance abuse and the loss of his wife and fiancée." (Pl.'s Br. at 13.)

I shall turn first to the general argument that additional facts must be "adduced" at trial because I "indicated that further information was necessary on issues, which further information would apparently affect its determination about whether Plaintiff was disabled." (Pl.'s Br. at 12, 13.) This argument appears to be grounded on a misunderstanding of basic summary judgment procedure. While it is true that I ultimately concluded that there is an absence of a genuine issue for trial on the plaintiff's disability discrimination claim, (see Mem. and Order on Def. Town &

Country Cadillac's Mot. for Summ. J., filing 99, at 15), this does not mean that summary judgment should be forestalled so that the plaintiff can try again to come forward with "necessary" evidence. Although summary judgment is properly forestalled when there is an absence of information due to an inadequate opportunity to complete discovery, see, e.g., FED. R. CIV. P. 56(f); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986), the plaintiff here has made no argument that he was "'railroaded' by a premature motion for summary judgment," and that additional discovery was necessary to obtain vital information to place before me prior to the disposition of the summary judgment motion. Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986). Instead, the plaintiff argues in essence that summary judgment should be denied so that he can have an opportunity at trial to close "gaps" in the information now before me. (See Pl.'s Br. at 13 ("If additional facts are necessary on an issue fairly raised by the evidence, they are to be adduced at trial, not decided against the Plaintiff on summary judgment.").) In support of this proposition, the plaintiff again refers me to Hershey v. Praxair, Inc., 969 F. Supp. 429, 433 (S.D. Tex. 1997), wherein the court stated:

> In this case, the Court finds that a fact question exists regarding whether Plaintiff had a disability as the ADA defines it at the time he was discharged. Plaintiff's medical records indicate that he had some restrictions and limitations in walking, sitting, standing, lifting, reaching, pulling and other activities. The regulations implementing the ADA list walking as a major life activity, and the Fifth Circuit has held that lifting, reaching, sitting and standing may constitute major life activities. Ray v. Glidden Co., 85 F.3d 227, 229 (5th Cir. 1996) (citing Dutcher v. Ingalls Shipbuilding, 53 F.3d 723, 726 n.7 (5th Cir. 1995)). *It cannot be ascertained from the medical records whether the limitations on these activities were severe enough to qualify Plaintiff as being unable to perform major life activities or significantly restricted in the performance of major life activities compared to the average person in society. These facts must be adduced at trial.*

Hershey v. Praxair, Inc., 969 F. Supp. 429, 433 (S.D. Tex. 1997) (emphasis added). Hershey failed to indicate whether the "Plaintiff's medical records" were submitted by the party moving for summary judgment (the defendant) or the party opposing summary judgment (the plaintiff). See generally Hershey v. Praxair, Inc., 969 F. Supp. 429. If those records were submitted by the moving party in support of its motion for summary judgment, then Hershey merely supports the relatively non-controversial proposition that facts remain to be adduced at trial because the medical records were inadequate to establish the absence of a genuine issue for trial. See Hershey v. Praxair, Inc., 969 F. Supp. at 432 ("The party moving for summary judgment bears the initial burden of 'informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact.'") (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). If this were true, however, Hershey would not support the plaintiff's argument that gaps in the information submitted *in opposition* to summary judgment indicate that facts remain to be adduced at trial and summary judgment must not be granted. (See Pl.'s Br. at 13.) If, on the other hand, the inadequate

medical records were submitted by the party opposing summary judgment, then I must respectfully disagree with Hershey's conclusion that the inadequacy of those records means that there remain facts to be adduced at trial; for as the court itself recognized, in order to meet his burden "the nonmovant 'must do more than simply show that there is some metaphysical doubt as to the material facts' by 'com[ing] forward with "specific facts showing that there is a genuine issue for trial."'" Hershey v. Praxair, Inc., 969 F. Supp. at 432 (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)). In other words, if the plaintiff-nonmovant came forward with the medical records that failed to indicate "whether the limitations on these activities were severe enough to qualify Plaintiff as being unable to perform major life activities or significantly restricted in the performance of major life activities compared to the average person in society," Hershey v. Praxair, Inc., 969 F. Supp. at 433, then the plaintiff would have failed to meet his burden of coming forward with specific facts showing that there is a genuine issue for trial, and there should be no need to proceed to trial to "adduce" additional facts to determine whether the plaintiff were disabled. Id. To do so would thwart the basic principles of summary judgment.

Simply put, under either interpretation described above, Hershey does not support the plaintiff's argument that "[i]f additional facts are necessary on an issue fairly raised by the evidence, they are to be adduced at trial, not decided against the Plaintiff on summary judgment." (Pl.'s Br. at 13.) However, in support of his argument the plaintiff has also referred me to Gabriel v. City of Chicago, 9 F. Supp. 2d 974, 982 (N.D. Ill. 1998) (citing Hershey v. Praxair, Inc., 969 F. Supp. 429, 433 (S.D. Tex. 1997)), which I shall now discuss.

In Gabriel, the court reviewed the plaintiff's testimony about the effects of "her back and stomach pains and swollen feet" on her ability to stand for long periods of time, see Gabriel v. City of Chicago, 9 F. Supp. 2d at 982, and concluded:

> Gabriel's testimony that she could not stand for long periods of time throughout most of her pregnancy permits a finding that she was "significantly restricted as to the condition, manner and duration" of her ability to stand, as compared to the average person. Latos [v. County of Cook, 1998 WL 142401 (N.D. Ill. 1998)] and Nieves [v. Individualized Shirts, 961 F. Supp 782, 794 (D. N.J. 1997)] confirm that the plaintiff's own testimony can create a fact question on this issue, and, along with Hershey, establish that the severity and duration of the impairment limiting major life activities are generally questions for the jury. In addition, there is independent evidence that Gabriel's impairment was severe--the fact that she gave birth two months prematurely alone supports this. The six-month duration of her back and stomach impairments supports a finding of substantial limitation as well.

Gabriel v. City of Chicago, 9 F. Supp. 2d at 983. I fail to see how Gabriel supports the plaintiff's argument that "[i]f additional facts are necessary on an issue fairly raised by the evidence, they are to be adduced at trial, not decided against the Plaintiff on summary judgment." (Pl.'s Br. at

13.) Unlike the plaintiff in <u>Gabriel</u>, the plaintiff in this case simply failed to provide evidence that created a question for the jury or permitted a finding that he was substantially limited in a major life activity. From the plaintiff's point of view, it was certainly desirable, if not "necessary," for "additional facts" to be included among the evidence that I was able to consider in this case. However, this does not mean that the plaintiff must be granted a trial to allow him to present additional facts to undo his prior failure to meet his burden in opposition to the defendant's summary judgment motion.

I shall now turn to the plaintiff's more focused argument that I improperly drew inferences against him. The plaintiff states, "The Court indicated it had no information on why Plaintiff's wife and fiancée left him and whether this was due to alcoholism, suggesting evidence of a causal link could change its determination on issues of reproduction and family and social functioning." (Pl.'s Br. at 13.) On the contrary, the Memorandum and Order on Defendant Town and Country Cadillac's Motion for Summary Judgment makes it clear that evidence of a causal link between the plaintiff's alcoholism and the loss of his fiancee was not relevant. (<u>See</u> Mem. and Order on Def. Town & Country Cadillac's Mot. for Summ. J., filing 99, at 10.) As explained in that Memorandum and Order, "the limiting effect of the plaintiff's alcoholism is to be considered in light of any mitigating measures taken to correct the impairment." (<u>See</u> Mem. and Order on Def. Town & Country Cadillac's Mot. for Summ. J., filing 99, at 7 (citing <u>Sutton v. United Airlines</u>, 527 U.S. 471 (1999)).) It was undisputed that the plaintiff lost his wife and fiancée during a time when he was suffering from unmitigated alcoholism, (<u>see</u> "Pl.'s Statement of Additional Facts Pursuant to Local Rule 12(N) - 12(N)(II)," filing 63, ¶ 60), and therefore the plaintiff cannot rely on the departure of these women to establish that he was substantially limited in family functioning during a time when his alcoholism has been mitigated by abstinence.[10] (<u>See</u> Mem. and Order on Def. Town & Country Cadillac's Mot. for Summ. J., filing 99, at 10.) Thus, even if the plaintiff is correct that I "ignored specific statements . . . connecting [the plaintiff's] substance abuse and the fact that his family left him," (Pl.'s Br. at 13), consideration of such evidence would not raise a genuine issue that the plaintiff was substantially limited by his mitigated alcoholism.

In the Memorandum and Order on Defendant Town and Country Cadillac's Motion for Summary Judgment, I stated that the fact that the plaintiff had two children suggested that the plaintiff was not substantially limited in reproduction. (<u>See</u> Mem. and Order on Def. Town & Country Cadillac's Mot. for Summ. J., filing 99, at 10.) Since the plaintiff had these children during a time when his alcoholism was unmitigated, it might seem incongruous to consider that information when determining that the plaintiff was not substantially limited, while simultaneously refusing to consider the fact that the plaintiff's wife and fiancée left him in making the same determination. I believe that it was proper to consider the existence of the plaintiff's children, because I cannot fathom how the condition, manner, or duration of the plaintiff's reproductive ability, which permitted him to sire two children during his active

---

[10]Indeed, as discussed <u>supra</u> at Part III.B.5, the undisputed evidence shows that since he has abstained from alcohol use, the plaintiff has remarried.

alcoholism, could be said to have been substantially limited by a negative effect of the mitigating measures adopted by the plaintiff (i.e., the measures associated with maintaining sobriety). See Sutton v. United Airlines, 527 U.S. 471, 482 (1999) ("[I]f a person is taking measures to correct for, or mitigate, a physical or mental impairment, the effects of those measures–both positive and negative–must be taken into account when judging whether that person is 'substantially limited' in a major life activity and thus 'disabled' under the Act."). The plaintiff did not argue nor present evidence to suggest that the negative effects of abstaining from alcohol included a negative effect on his ability to reproduce. (See Pl.'s Response to Def. Town and Country's Mot. for Summ. J., filing 62, at 8.)

However, as I explained above at Part III.B.7, even if I erred by noting the existence of the plaintiff's children, that error does not affect the decision to grant summary judgment on the plaintiff's discrimination claim, because the plaintiff did not come forward with sufficient evidence to raise a genuine issue whether he was substantially limited in the major life activity of reproduction.

The plaintiff is correct that on consideration of a motion for summary judgment, "all justifiable inferences" are to be drawn in favor of the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). See also Purze v. Village of Winthrop Harbor, 286 F.3d 452, 454 (7th Cir. 2002). However, his arguments that inferences were improperly drawn against him in this case must be rejected.

9.    "Personal Knowledge" and the Plaintiff's Affidavit

Next, the plaintiff contends that it was improper of me to strike certain evidence from his affidavit due to a "lack of foundation of personal knowledge." (Pl.'s Br. at 13.) In particular, the plaintiff claims that it was erroneous for me to strike "information that there was a relationship between Plaintiff's wife and fiancée leaving him and his alcoholism (Order re: Affidavit, p. 3, 9), despite being able to determine from the context of Plaintiff's own materials the possibility of such a relationship and of Plaintiff's knowledge or reasonable lay opinion of why this occurred." (Pl.'s Br. at 14.) In support of this argument, the plaintiff refers me to Haupt v. International Harvester Co., 582 F. Supp. 454, 548 (N.D. Ill. 1984), wherein the court stated that "Rule 56's requirement that reasonable inferences be drawn in favor of the party opposing summary judgment . . . can be applied to the construction of Haupt's affidavit itself," and that "[i]n many instances the nature of the exhibits or the existence of personal knowledge can reasonably be inferred from the affidavit's own context." Haupt v. International Harvester Co., 582 F. Supp. 454, 548 (N.D. Ill. 1984). (See also Pl.'s Br. at 13 ("Haupt . . . instructs that the reasonable inference standard should be applied to affidavits as well as other materials, holding that the existence of personal knowledge can be inferred from an affidavit's own context.").)

The plaintiff has misapprehended the court's analysis in Haupt. In Haupt the court merely concluded that this "reasonable inferences requirement" counseled against striking an affidavit in its entirety. See Haupt v. International Harvester Co., 582 F. Supp. at 548. Although

the court concluded that the plaintiff's affidavit should not be stricken in its entirety, the court found that it was still necessary to consider each of the defendant's objections to the affidavit individually. (See id. The court did so, and concluded that specific rulings on the objections were unnecessary because the statement of facts set forth by the court did not rely on any evidence that the court found to be inadmissible. See id. In this case, I did not strike the plaintiff's affidavit in its entirety, but analyzed each of the defendant's arguments separately and explained my rulings on the defendant's motion to strike. (See generally Mem. and Order on Def.'s Mot. to Strike the Aff. of A. Robert McKay, filing 98.) Haupt does not support the plaintiff's argument that I improperly stuck evidence from the plaintiff's affidavit by failing to consider the "reasonable inferences requirement."

In addition, the plaintiff seems to argue that I should have inferred that he has personal knowledge about a relationship between his alcoholism and the departure of the women from the "Plaintiff's own materials." (See Pl.'s Br. at 13-14.) To the extent that the plaintiff suggests that I should look to evidentiary materials beyond the affidavit in order to infer that the affidavit was made on the plaintiff's own personal knowledge, his suggestion is directly contrary to Rule 56(e). See, e.g., Drake v. Minnesota Mining & Manufacturing Co., 134 F.3d 878, 887 (7th Cir. 1998) ("Rule 56(e) requires that affidavits offered in opposition to summary judgment 'be made on personal knowledge, ... set[ting] forth such facts as would be admissible in evidence, and ... show[ing] affirmatively that the affiant is competent to testify to the matters stated therein.'"). See also Palucki v. Sears, Roebuck & Co., 879 F.2d 1568, 1572 (7th Cir. 1989). The Ninth Circuit has stated the matter directly: "That Rule 56(e)'s requirements of personal knowledge and competence to testify have been met may be inferred from the affidavits themselves." Barthelemy v. Air Lines Pilots Association, 897 F.2d 999, 1018 (9th Cir. 1990). The plaintiff has not convinced me that I have an obligation to look beyond the affidavit itself and scour the record to determine whether it is appropriate to infer that the affiant has personal knowledge of the matters stated in his affidavit.

Moreover, I have already explained that the plaintiff's evidence that his *unmitigated* alcoholism was related to the women's departures is not relevant to the determination of whether the plaintiff's *mitigated* alcoholism substantially limited his family functioning. See supra Part III.B.8. Thus, even if the plaintiff were correct that his evidence should not have been stricken due to his failure to demonstrate that the matters stated in his affidavit were within his personal knowledge, amendment of the judgment to allow the plaintiff's discrimination claim to proceed would not be appropriate.

The plaintiff also argues that I should not have stricken "Plaintiff's statements of awareness of prescription drug interactions with his alcoholism" while "ignoring the extensive evidence of alcoholism treatment by Plaintiff and the uncontested testimony of Dr. Angres about Plaintiff's alcoholism and what is required to maintain sobriety." (Pl.'s Br. at 14.) Again, the plaintiff seems to believe that I should review evidence beyond the affidavit itself in order to determine whether the affidavit was "made on personal knowledge" pursuant to Rule 56(e). For the reasons stated above, this argument is rejected.

The Memorandum and Order on Defendant's Motion to Strike the Affidavit of A. Robert McKay, filing 98, thoroughly explained each of my rulings on the defendant's objections. The plaintiff has not persuaded me that any of those rulings was incorrect, and he has certainly not established that any errors support an amendment of the judgment pursuant to Rule 59(e).

10. Plaintiff's Exhibit 32

Next the plaintiff argues that I erred in granting the defendant's motion to strike Plaintiff's Exhibit 32, claiming that the exhibit falls within the exception to the hearsay rule set forth in Federal Rule of Evidence 803(4). (See Pl.'s Mot. to Amend J., filing 107, at 3-4.) The plaintiff made this argument once before in his response to the defendant's motion to strike plaintiff's exhibits 32 and 33, filing 85, and this argument was rejected. (See generally Pl.'s Response to Def. Town & Country's Mot. to Strike Pl.'s Ex. 32 and 33, filing 85; Mem. and Order on Def.'s Mot. to Strike Pl.'s Ex. 32 and 33, filing 97.) Now, however, he refers me to two cases from other jurisdictions - - one of which is unpublished - - in support of his argument that Rule 803(4) renders Exhibit 32 admissible. (See Pl.'s Mot. to Amend J., filing 107, at 4 (citing Navarro de Cosme v. Hospital Pavia, 922 F.2d 926 (1st Cir. 1991) and Leinberry v. Anes Electronics, Inc., 1992 U.S. Dist LEXIS 2264 (E.D. Pa. 1992)).) Though this is the first time the plaintiff has raised these cases, each of them was available to the plaintiff at the time he originally advanced his argument that his exhibit was admissible pursuant to Rule 803(4). The plaintiff's belated attempt to enhance his previous argument is inappropriate. See Moro v. Shell Oil Co., 91 F.3d 872, 876 (7th Cir. 1996).

In addition, Exhibit 32 consisted of treatment records, and no foundation was laid for the admissibility of those records under Rule 803(6). (See Mem. and Order on Def.'s Mot. to Strike Pl.'s Ex. 32 and 33, filing 97, at 4-6.) In other words, even if my determination that the contents of Exhibit 32 did not fall within Rule 803(4) was erroneous, Exhibit 32 was still properly stricken because the record containing the alleged "statements for purposes of medical diagnosis or treatment" was itself inadmissible hearsay. I refer the plaintiff to his own case, Leinberry v. Anes Electronics, Inc., 1992 U.S. Dist LEXIS 2264 (E.D. Pa. 1992), wherein the court found that while some elements of Leinberry's statement to her physician were admissible under Rule 803(4), the plaintiff's motion for a declaration of the admissibility of that statement, which was contained in her physician's treatment notes, was denied because the Rule 803(6) business record exception was not satisfied. See Leinberry v. Anes Electronics, Inc., Civ. No. 90-4574, 1992 WL 38382, at *3 (E.D. Pa. Feb. 24, 1992).

11. The "One-sided Paper Trial" Argument

Finally, the plaintiff argues that I converted the motion for summary judgment into a "one-sided paper trial." (Pl.'s Br. at 14.) According to the plaintiff:

> To require that the non-movant anticipate all possible objections and meet them prior to filing a response to a Motion for Summary Judgment, with no

opportunity to provide additional information based on the Court's ruling and further provide complete direct examinations, converts the motion for summary judgment into a one-sided paper trial, especially where, as here, no oral argument was possible. It would require every non-movant to provide the paper equivalent of the weeks necessary to put on every piece of evidence that would be produced at trial. It would require either affidavits or depositions by the party presenting the witness which are the equivalent of a full direct examination, even if that examination would require hours and therefore take up hundreds of pages. It would require, contrary to *Celotex*, that all evidence be provided not only in admissible form but be provided in full. It converts a Motion for Summary Judgment into a complete trial.

(Pl.'s Br. at 14-15.) The plaintiff's argument, though impassioned, is flawed. The fact that a party opposing a motion for summary judgment need not submit evidence in a form that would be admissible at trial does not mean that the party may submit evidence that would be inadmissible under the Federal Rules of Evidence. As stated by the Seventh Circuit, "We have squarely held that failure to satisfy Local Rule 12(N) and *failure to provide admissible evidence* are each permissible grounds on which to exclude supporting materials from consideration on summary judgment. The judge here did no more than strictly enforce the local rule, as was his prerogative, and evaluate the admissibility of the proffered evidence; in neither instance did he abuse his discretion." Corder v. Lucent Technologies Inc., 162 F.3d 924, 927 (7th Cir. 1998) (emphasis added) (citation omitted). This principle is stated even more bluntly in Federal Rule of Civil Procedure 56(e): "Supporting and opposing affidavits . . . shall set forth such facts as would be admissible in evidence . . . ." See also Whitted v. General Motors Corp., 58 F.3d 1200, 1204 (7th Cir. 1995) ("Yet, materials submitted for summary judgment must be otherwise admissible."); Gustovich v. AT & T Communications, Inc., 972 F.2d 845, 849 (7th Cir. 1992) ("When acting on a motion for summary judgment the judge considers only evidence that would be admissible at trial."). Even a litigant proceeding *pro se* is required to comply with the federal rules of evidence and civil procedure when opposing a motion for summary judgment. See, e.g., Schaefer v. Newton, 968 F. Supp. 246, 250 n.2 (S.D. Ind. 1994).

Requiring the plaintiff to "anticipate all possible objections and meet them prior to filing a response to a Motion for Summary Judgment," (Pl.'s Br. at 14), requires only that the plaintiff comply with the rules of evidence and the rules associated with summary judgment motions. In order to comply with these rules, the plaintiff is not required "to provide the paper equivalent of the weeks necessary to put on every piece of evidence that would be produced at trial." (Pl.'s Br. at 14-15.) Nor is the plaintiff required to provide "either affidavits or depositions . . . which are the equivalent of a full direct examination, even if that examination would require hours and therefore take up hundreds of pages." (Id. at 15.)

The plaintiff had his opportunity to submit materials in opposition to the defendant's motion for summary judgment. Far too often, his opposition failed to comply with the appropriate rules. His failures do not warrant an amendment to the judgment to permit his

discrimination claim to proceed.

I have analyzed each of the plaintiff's arguments that the judgment must be amended to permit his claim of discrimination in violation of the ADA to proceed to trial, and each has been rejected. There is no basis for amending the judgment to reinstate that claim. However, the plaintiff's retaliation claim is partly viable, and therefore it was improper for me to dismiss Count II of the plaintiff's complaint in its entirety, to dismiss the plaintiff's defamation claim for lack of jurisdiction, and to direct the entry of judgment terminating this case.

**IT IS ORDERED** that the plaintiff's motion to amend the judgment, filing 107, is granted in part:

1. The judgment entered on May 17, 2000, (filing 110) is vacated;

2. The Order on Defendant Max Cohen's Motion for Summary Judgment and Other Pending Motions, filing 108, is vacated; and

3. The Order on Defendant's Town and Country Cadillac's Motion for Summary Judgment, filing 99, is amended as follows:

**IT IS ORDERED** that the defendant's Motion for Summary Judgment, filing 46, is granted in part. The defendant is entitled to summary judgment on the plaintiff's claim that he was discriminated against in violation of the ADA.

Dated May 31, 2002.

BY THE COURT

Warren K. Urbom
United States Senior District Judge