# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Warren K. Urbom | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 97 C 2102 | **DATE** | 7/9/2002 |
| **CASE TITLE** | A. Robert McKay vs. Town & Country Cadillac, etal | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum and Order: Defendant Max Cohen's motion for summary judgment (43-1) is granted.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | |
|---|---|---|---|
| | No notices required. | | number of notices |
| ✓ | Notices mailed by judge's staff. | | JUL 17 2002 date docketed |
| | Notified counsel by telephone. | | |
| | Docketing to mail notices. | | |
| | Mail AO 450 form. | | docketing deputy initials |
| | Copy to judge/magistrate judge. | | 7/9/2002 date mailed notice |
| GL | courtroom deputy's initials | Date/time received in central Clerk's Office | GL mailing deputy initials |

Document Number
192

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| A. ROBERT McKAY, | 97 C 2102 |
| Plaintiff, | MEMORANDUM AND ORDER ON DEFENDANT MAX COHEN'S MOTION FOR SUMMARY JUDGMENT |
| vs. | |
| TOWN AND COUNTRY CADILLAC, INC. and MAX COHEN, | |
| Defendants | |

Before me is a motion for summary judgment on Count IV of the plaintiff's complaint, filing 43, by Defendant Max Cohen. For the following reasons, I conclude that the defendant's motion should be granted.

## I. BACKGROUND[1]

Town & Country Cadillac, Inc. (Town & Country) is an automobile dealership doing business in Naperville, Illinois. Since Town & Country's inception in 1972, Max Cohen has served as its president. On June 17, 1995, Town & Country hired the plaintiff, A. Robert McKay, as its "New Car Sales and Lease Manager." (Def. Max Cohen's 12(M)[2] Statement of Undisputed Material Facts in Support of His Motion for Summary Judgment (hereinafter Def.'s Statement of Facts), filing 45, ¶ 5.) During the plaintiff's employment at Town & Country, Ken Bacigalupo was the defendant's "General Manager" and the plaintiff's immediate supervisor. (Id. ¶ 6; see also Pl.'s Statement of Material Facts Pursuant to Local Rule 12(N), Response to Defendant's 12(M) Statement (hereinafter Pl.'s Response to Def.'s Facts), filing 61, ¶ 6.)

Until June 1, 1996, the plaintiff consumed alcohol on a nightly basis, and there is evidence that he suffers from alcoholism. The plaintiff's expert witness, Daniel Angres, M.D., indicated that an alcoholic is a person who is addicted to alcohol, and that alcohol is a "drug[] of

---

[1]The background facts presented herein are taken from the parties' statements of material facts that have been submitted in accordance with Local Rule 56.1, unless otherwise specified. The evidence is presented here in the light most favorable to the plaintiff. See Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970).

[2]Local Rules 12M and 12N are now Local Rules 56.1(a) and 56.1(b). Malec v. Sanford, 191 F.R.D. 581, 583 (N.D. Ill. 2000).

1



choice" of alcoholics. (See Def.'s Statement of Facts ¶ 13 (citing Def.'s Addendum of Exhibits, Part 3 of 4, filing 49, Ex. H, Angres Dep. at 10:9-14; 12:12-17); Pl.'s Statement of Material Facts Pursuant to Local Rule 12(N), Pl.'s Statement of Additional Facts (hereinafter Pl.'s Statement of Facts), filing 61, ¶ 32.) Since June 1, 1996, which the plaintiff considers his anniversary of sobriety, he has avoided consuming alcoholic beverages. On June 3, 1996, the plaintiff disclosed to Cohen that "he had a problem with alcohol," and that "he was going to do something about it." (Def.'s Statement of Facts ¶ 8.) More specifically, there is evidence that the plaintiff told Cohen that he was an alcoholic, that he was working on his problem and receiving help, and that he did not drive while under the influence of alcohol. (See Pl.'s Response to Def.'s Facts ¶ 8.) Cohen became angry with the plaintiff and began to "rant and rave." (Pl.'s Response to Def.'s Facts ¶ 11(a).) Cohen told the plaintiff that the plaintiff's demonstration vehicle would be taken from him because he was "a fucking drunk."[3] (Id. ¶ 10(b).) Cohen also called the plaintiff a drug addict. (Id. ¶ 10(c); Def.'s Statement of Facts ¶ 11.) The conversation between Cohen and the plaintiff occurred in Cohen's office, and no other individuals were present. However, there is evidence that Bacigalupo could hear Cohen yelling during his meeting with the plaintiff, although Bacigalupo could not make out the "particulars" of the conversation. (Def.'s Addendum of Exhibits, Part 1 of 4, filing 49, Ex. C, Bacigalupo Dep. at 83:23-24.)[4]

Shortly after his conversation with the plaintiff, Cohen met with Bacigalupo and told him that he did not want a drunk driving his car. Cohen also asked Bacigalupo to take the plaintiff's demonstration car keys. Bacigalupo believed it to be "crystal clear" that Cohen was accusing the plaintiff of driving under the influence of alcohol, although it seems that no such accusation was ever made by Cohen directly or explicitly. (See Def.'s Addendum of Exhibits, Part 1 of 4, filing 49, Ex. C, Bacigalupo Dep. at 267:6-13; 291:4-17.) Although Bacigalupo's office is open to the showroom at Town & Country, there is no evidence that anyone overheard the conversation between Cohen and Bacigalupo.

Cohen also spoke to Bob Novak, Town & Country's Service Manager, after learning of the plaintiff's alcoholism. Cohen asked Novak what he would do if he had an employee with a demonstration vehicle who was an alcoholic and was attending Alcoholics Anonymous. However, the plaintiff was never mentioned by name, and Novak only assumed that Cohen was referring to McKay because he had heard rumors about the plaintiff's problems with alcohol

---

[3]Cohen claims that he confiscated the plaintiff's demonstration vehicle for safety and insurance reasons. There is evidence, however, that Cohen seized the car because he assumed that the plaintiff's driving would he affected by his alcoholism.

[4]There is also evidence that a salesman, Chuck Jonas, could overhear an angry-sounding Cohen during this meeting. (See Pl.'s Statement of Facts ¶ 2.) However, Jonas only *assumed* that the plaintiff was in Cohen's office at that time. (See Def. Max Cohen's Response to Pl.'s Statement of Facts Pursuant to Local General Rule 56.1(a)(3)(B) (hereinafter Def.'s Response to Pl.'s Facts), filing 81, ¶ 2.) He could not hear any specific words, and he did not know what caused Cohen to yell. (See id.)

2

before Cohen came to speak with him. (See Def.'s Supplemental Addendum of Exhibits, filing 78, Ex. AA, Novak Dep. at 134:8-136:9; 150:15-151:6.) In addition, Novak states that he heard Cohen refer to a "drunken fucking bum" on more than one occasion, and that he assumed that Cohen was referring to the plaintiff.

There is evidence that Mike Hambach, Town & Country's Used Car Manager, heard Cohen state "Did you hear about McKay? He's a goddamn juicer. There's no way I'm letting that drunk drive my car." (Pl.'s Statement of Material Facts Pursuant to Local Rule 12(N), filing 61, Ex. 4, Hambach Aff. ¶¶ 1, 5.) This statement was made in the showroom at Town & Country in the presence of Hambach and several Town & Country employees and customers. (See id. at ¶¶ 4, 6.)

For his own part, the plaintiff discussed his alcohol problem with two other individuals at Town & Country: Ken Bacigalupo and Bob Lang. (Pl.'s Response to Def.'s Facts ¶ 12.)

The defendant's expert, Melvin James Hardy, testified that although the plaintiff's alcoholism would not bother him personally, it could bother some people. He also testified that he would check out McKay with his insurer due to the statement by Cohen that he did not want a drunk driving his car. In fact, the plaintiff has not found work in an auto dealership since his termination from Town & Country. The plaintiff claims that he did interview for a position as Sales Manager at Thomas Buick, but he was not hired for that position. (See Pl.'s Statement of Facts ¶ 35 (citing Def.'s Addendum of Exhibits, Part 1 of 4, filing 49, Ex. B, McKay Dep. at 265:11-266:13.) The plaintiff states that a person who called Thomas Buick to recommend the plaintiff for the position was asked, "Do you know what happened at Town & Country?" (Id.)

On June 26, 1996, the plaintiff's employment at Town & Country was terminated. The plaintiff then filed a complaint against Town & Country and Max Cohen, filing 1, alleging a violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C.A. § 621 et seq. (West 1999) (Count I); a violation of the Americans with Disabilities Act (ADA), 42 U.S.C.A. § 12101 et seq. (West 1995) (Count II); a state law claim for the intentional infliction of emotional distress (Count III); and a state law claim for defamation (Count IV). As a result of Town & Country's and Cohen's motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) (filing 5), Count III was dismissed in its entirety and Cohen was dismissed from Counts I and II. (See filing 13; McKay v. Town & Country Cadillac, Inc., 991 F. Supp. 966, 973 (N.D. Ill. 1997).) Also, Count I of the complaint was eventually voluntarily dismissed in its entirety pursuant to a joint motion filed by the parties. (See filings 103 and 104.) Town & Country moved for summary judgment on Count II of the complaint. (See filing 46.) This motion was granted because the evidentiary materials before me demonstrated that there was no genuine issue whether the plaintiff was disabled within the meaning of the ADA, and that the defendant was therefore entitled to judgment as a matter of law. (See generally Mem. and Order on Def. Town & Country Cadillac's Mot. for Summ. J., filing 99.) In conjunction with the other dismissals, this ruling eliminated all but the plaintiff's defamation claim. I determined that supplemental jurisdiction ought not be exercised over the defamation claim, and it was dismissed

3

without prejudice. (See Mem. and Order on Def. Max Cohen's Mot. for Summ. J. and Other Pending Motions, filing 108.) However, it was subsequently determined that Town & Country's motion for summary judgment on Count II of the complaint failed to address the plaintiff's claim of retaliation in violation of the ADA. (See generally Mem. and Order on Pl.'s Mot. to Amend J., filing 125.) I therefore decided to allow Town & Country to move for summary judgment on the plaintiff's retaliation claim. (See id.) This motion, entitled "Town & Country Cadillac, Inc.'s Motion for Summary Judgment on Plaintiff's Retaliation Claim," filing 128, was granted in part, but I determined that a portion of the plaintiff's retaliation claim remained for trial. (See Mem. and Order on Def. Town & Country Cadillac Inc.'s Mot. for Summ. J. on Pl.'s Retaliation Claim, filing 190.) Since one of the plaintiff's federal claims remained viable, I decided that supplemental jurisdiction should in fact be exercised over the plaintiff's defamation claim. (See Second Mem. and Order on Pl.'s Mot. to Amend J., filing 191.)

With the reinstatement of the plaintiff's defamation claim, Max Cohen's Motion for Summary Judgment, filing 43, is no longer moot. Having considered the materials submitted by the parties in connection with this motion, I find that Max Cohen's motion must be granted.

## II. STANDARD OF REVIEW

A motion for summary judgment shall be granted by the court when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A genuine issue of material fact exists when there is sufficient evidence favoring the party opposing the motion for a reasonable jury to return a verdict for that party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the evidence is to be taken in the light most favorable to the nonmoving party. Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970). If the moving party meets the initial burden of establishing the nonexistence of a genuine issue, then the burden shifts to the opposing party to produce evidentiary materials demonstrating the existence of a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 323-26 (1986); FED. R. CIV. P. 56(e). The opposing party "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial" and "must present affirmative evidence in order to defeat a properly supported motion for summary judgment." Anderson, 477 U.S. at 256-57.

## III. ANALYSIS

In Illinois, three elements must be proved to support a claim for defamation. A plaintiff "must show that defendant made a false statement concerning plaintiff, that there was an unprivileged publication of the defamatory statement to a third party by defendant, and that the plaintiff was damaged." Cianci v. Pettibone Corp., 698 N.E.2d 674, 678 (Ill. App. Ct. 1998).

4

"Defamatory statements may be actionable *per se*, or actionable *per quod*." Schaffer v. Zekman, 554 N.E.2d 988, 991 (Ill. App. Ct. 1990). "A publication is defamatory *per se* if it is 'so obviously and naturally harmful to the person to whom it refers that a showing of special damages is unnecessary'; the defamatory character of the statement is apparent on its face, and extrinsic facts are not necessary to explain." Id. (quoting Owen v. Carr, 497 N.E.2d 1145, 1147 (Ill. 1986)) (citations omitted). "Statements are actionable *per quod* if they necessitate extrinsic facts or innuendo to explain their defamatory meaning, and require evidence demonstrating, as a matter of fact, that some substantial injury resulted to the aggrieved person from their use." Id. (citing Heerey v. Berke, 544 N.E.2d 1037, 1041 (Ill. App. Ct. 1989)).

The allegedly defamatory statements about which a plaintiff complains must be specified in the complaint. Doherty v. Kahn, 682 N.E.2d 163, 172 (Ill. App. Ct. 1997); Goldstein v. Kinney Shoe Corp., 931 F. Supp. 595, 597 (N.D. Ill. 1996). Each statement is treated as a separate defamation claim. See, e.g., Millsaps v. Bankers Life Co., 342 N.E.2d 329, 334-35 (Ill. App. Ct. 1976). In this case, the plaintiff states the following at paragraphs 20-22 of his complaint:

20. On or about May 30, 1996, Defendant COHEN called Plaintiff a "drunk" and a "drug addict[,]" accused Plaintiff of driving his demonstration vehicle under the influence of alcohol and otherwise disparaged Plaintiff for his disability of alcoholism.
21. On or about May 30, 1996, Defendant COHEN told Plaintiff that he was taking away Plaintiff's demonstration car because of Plaintiff's alcoholism.
22. On or about May 30, 1996, Defendant COHEN repeated the statements identified in paragraphs 20 to 22 to other employees of Defendant TOWN AND COUNTRY, including but not limited to Ken Bacigalupo, General Manager, and other unknown employees.

(Compl., filing 1, ¶¶ 20-22.) It seems to me that the plaintiff has alleged with adequate specificity that the defendant defamed him by referring to him as (1) a drunk and (2) as drug addict, and by (3) accusing the plaintiff of driving under the influence of alcohol. These three statements and no others shall be considered in connection with the plaintiff's defamation claim.

The defendant argues that he is entitled to summary judgment because 1) the allegedly defamatory statements are substantially true; 2) no defamatory comments regarding the plaintiff were published; 3) none of the statements can be considered defamatory *per se*; 4) the plaintiff cannot prevail on his claims based upon a theory of defamation *per quod*; and 5) the defendant's statements were privileged. I shall evaluate each of the defendant's arguments below.

### A. Substantial Truth

"Truth is a defense to a defamation action and, to establish this defense, defendant need

only show the truth of the 'gist' or 'sting' of the defamatory material." Cianci v. Pettibone Corp., 698 N.E.2d 674, 678 (Ill. App. Ct. 1998) (citing Lemons v. Chronicle Publishing Co., 625 N.E.2d 789, 791 (Ill. App. Ct. 1993)). "Only 'substantial truth' is required for the defense." Id. (citing Lemons, 625 N.E.2d at 791). Substantial truth is ordinarily a question for the jury, but where no reasonable jury could find that substantial truth had not been established, the question is one of law. Id. at 679 (citing Gist v. Macon County Sheriff's Department, 671 N.E.2d 1154, 1157 (Ill. App. Ct. 1996)).

The defendant argues that his alleged statements that the plaintiff was "a drunk and a drug addict" (Compl., filing 1, ¶ 20) are substantially true[5] because the plaintiff has admitted to his problems with alcohol, and the plaintiff's own expert has stated that alcohol is a "drug[] of choice" of alcoholics. (See Def.'s Statement of Facts ¶ 13 (citing Def.'s Addendum of Exhibits, Part 3 of 4, filing 49, Ex. H, Angres Dep. at 10:9-14; 12:12-17); Pl.'s Statement of Material Facts Pursuant to Local Rule 12(N), Pl.'s Statement of Additional Facts (hereinafter Pl.'s Statement of Facts), filing 61, ¶ 32.) In response, the plaintiff first states that Cohen knew that the plaintiff was an alcoholic and was getting help. (See Pl.'s Response to Def. Max Cohen's Mot. for Summ. J. (hereinafter Pl.'s Response Br.), filing 60, at 8.) To be frank, I fail to see the relevance of the plaintiff's first argument. Whether or not Cohen knew these facts does not seem to affect the "substantial truth" of his alleged statements that the plaintiff was a drunk and a drug addict.

Next, the plaintiff argues that the defendant's argument is "truly offensive":

Cohen is asking this Court to be the only one ever to rule, as a matter of law, that it is substantially true to accuse a person with the disease of alcoholism who has stopped drinking, entered recovery, is attending AA and is seeking help, of drunk driving, continued habitual intoxication and being lazy and living off others and that that person has no way of seeking the protection of the courts.

(Pl.'s Response Br. at 8.) The plaintiff then suggests that the defendant's argument is akin to claiming that it would not be "defamatory to call a person with HIV a 'cripple'" and that "under Defendant's rule, [it would] be substantially true to call an African American a 'n–ger[,]' since some people refer to African-Americans in that way." (Id. at 8-9.) The plaintiff urges that "[t]his is not what American law protects." (Id. at 9.) It seems to me that the plaintiff has not only grossly exaggerated Cohen's allegedly defamatory statements, but has constructed an argument that, though emotionally compelling, is not supported by law. See Fleming v. Kane County, 636 F. Supp. 742, 746-47 (N.D. Ill. 1986) (holding that "gutless bastard" and "black son of a bitch" were "abusive, offensive, and indecent" comments, but did not fall within any category of defamation *per se*); see also Bauer v. Murphy, 530 N.W.2d 1, 6 n.13 (Wis. Ct. App. 1995); Rambo v. Cohen, 587 N.E.2d 140, 147-149 (Ind. Ct. App. 1992). The defendant has characterized the plaintiff's argument as "inflammatory" and having "nothing to do with the

---

[5]The defendant does not appear to argue that his alleged accusation that the plaintiff drove while under the influence of alcohol was substantially true.

6

issue at hand." (Cohen's Reply in Supp. of His Mot. for Summ. J. (hereinafter Def.'s Reply Br.), filing 79, at 5.) I am inclined to agree with the defendant. Whether a statement is offensive and whether it is substantially true are two distinct issues.

The plaintiff next argues that the substantial truth of an allegedly defamatory statement should be evaluated with reference to the "specific facts from the same time frame." (Pl.'s Response Br. at 9 (discussing Haynes v. Alfred A. Knopf, Inc., 8 F.3d 1222 (7th Cir. 1993)).) Specifically, the plaintiff claims that "Cohen made the statements that Mr. McKay was a 'drunk[,]' 'drunken f- - - ing bum' and 'drunk driving my car' at a time that he knew none of those things was occurring." (Id.) Since these accusations were not true at the time that they were made, the plaintiff argues that pursuant to Haynes, they cannot be found to be substantially true. In reply to this argument, the defendant agrees that "substantial truth is determined by looking at the facts as they existed close in time with the actual utterance." (Def.'s Reply Br. at 3.) However, the defendant claims that the plaintiff gave Cohen the impression that he was still drinking at the time of their meeting on June 3, 1996, and that within a very short time of this meeting, the plaintiff was in fact drinking to intoxication on a nightly basis. (See id. at 4.) Therefore, the defendant argues that Cohen's comments were substantially true at the time they were made.

Initially, I must point out that the allegation that Cohen referred to the plaintiff as a "drunken f- - - ing bum" was not stated in the complaint with specificity, and therefore it cannot be the basis for a defamation claim. See Doherty v. Kahn, 682 N.E.2d 163, 172 (Ill. App. Ct. 1997); Goldstein v. Kinney Shoe Corp., 931 F. Supp. 595, 597 (N.D. Ill. 1996); (Compl., filing 1, ¶ 20). Additionally, as I have noted above, the defendant does not argue that his alleged statement accusing the plaintiff of drunk driving was substantially true. The plaintiff's argument on this point is therefore moot. Conversely, it seems that the plaintiff has not responded to the defendant's argument that the "drug addict" statement was substantially true. It seems to me that, given the absence of a response from the plaintiff, the undisputed evidence that an "alcoholic" may be defined as a person who is *addicted* to alcohol and that alcohol is a *drug* of choice of alcoholics, (see Def.'s Statement of Facts ¶ 13; Pl.'s Statement of Facts ¶ 32), and the fact that the plaintiff claims to have been suffering from alcoholism at all relevant times (see Compl., filing 1, ¶ 4), the defendant's alleged statement that the plaintiff was a drug addict is substantially true. There is no genuine issue of material fact and the defendant is entitled to judgment as a matter of law on the plaintiff's defamation claim based on the "drug addict" statement.

As for whether the allegation that Cohen referred to the plaintiff as "a drunk" is substantially true, I find that I cannot say that no reasonable jury could conclude that substantial truth has not been established by the defendant. Cianci v. Pettibone Corp., 698 N.E.2d 674, 679 (Ill. App. Ct. 1998) (citing Gist v. Macon County Sheriff's Department, 671 N.E.2d 1154, 1157 (Ill. App. Ct. 1996)). In other words, a jury will be needed to examine the facts as they existed close to the time of the alleged statements and determine whether their gist or sting is true, because it seems to me that a reasonable jury might conclude that a statement referring to a

7

recovering alcoholic who is abstaining from alcohol as "a drunk" is not substantially true. Cianci v. Pettibone Corp., 698 N.E.2d 674, 678 (Ill. App. Ct. 1998) (citing Lemons v. Chronicle Publishing Co., 625 N.E.2d 789, 791 (Ill. App. Ct. 1993)). Therefore, I reject the defendant's argument that summary judgment must be granted in his favor with respect to this allegedly defamatory statement.

### B. Publication

The defendant argues that the "drug addict" statement was not published to a non-privileged third party, and that he is therefore entitled to summary judgment. See Cianci v. Pettibone Corp., 698 N.E.2d 674, 678 (Ill. App. Ct. 1998). The organization of the plaintiff's response brief does not follow the organization of the defendant's brief supporting his motion for summary judgment, but after studying carefully the plaintiff's entire response, I am satisfied that the plaintiff has not responded to the defendant's argument. (See generally Pl.'s Response Br.) Since there is no evidence that the statement referring to the plaintiff as a "drug addict" was ever published to a third party, the defendant would be entitled to summary judgment with respect to this statement even if I had not previously determined that the "drug addict" statement was substantially true.

The defendant also argues that there is no evidence that he referred to the plaintiff as "a drunk" in front of others. (See Def.'s Reply Br. at 6.) However, the defendant did not raise this argument in his original brief filed in support of his motion for summary judgment. (See Mem. in Supp. of Def. Max Cohen's Mot. for Summ. J. (hereinafter Def.'s Br.), filing 44, at 5-6.) By failing to raise this argument in his original brief, the defendant has deprived the plaintiff of an opportunity to respond. In the interests of fairness, the defendant's argument that the statement that the plaintiff was "a drunk" was not published and shall not be considered.

### C. Defamation *Per Se*

With the elimination of the plaintiff's claim that he was defamed by the defendant's "drug addict" statement, only two allegedly defamatory statements remain to be analyzed. The defendant argues that these statements - - that the plaintiff was "a drunk" and that the plaintiff was driving while under the influence of alcohol - - are not defamatory *per se*. As I noted above, "A publication is defamatory *per se* if it is 'so obviously and naturally harmful to the person to whom it refers that a showing of special damages is unnecessary'; the defamatory character of the statement is apparent on its face, and extrinsic facts are not necessary to explain." Schaffer v. Zekman, 554 N.E.2d 988, 991 (Ill. App. Ct. 1990) (quoting Owen v. Carr, 497 N.E.2d 1145, 1147 (Ill. 1986)) (citations omitted). "Only certain limited categories of defamatory statements are deemed actionable *per se*." Bryson v. News America Publications, Inc., 672 N.E.2d 1207, 1214 (Ill. 1996).

> Under our common law, four categories of statements are considered actionable *per se* and give rise to a cause of action for defamation without a showing of

8

special damages. They are: (1) words that impute the commission of a criminal offense; (2) words that impute infection with a loathsome communicable disease; (3) words that impute an inability to perform or want of integrity in the discharge of duties of office or employment; or (4) words that prejudice a party, or impute lack of ability, in his or her trade, profession or business.

Id. at 1214-15 (citing Kolegas v. Heftel Broadcasting Corp., 607 N.E.2d 201, 206 (Ill. 1992).

Even if a statement falls into one of the recognized categories of words that are actionable *per se*, it will not be found actionable *per se* if it is reasonably capable of an innocent construction. The innocent construction rule requires courts to consider a written or oral statement in context, giving the words, and their implications, their natural and obvious meaning. If, so construed, a statement "may reasonably be innocently interpreted or reasonably be interpreted as referring to someone other than the plaintiff, it cannot be actionable *per se*." Only reasonable innocent constructions will remove an allegedly defamatory statement from the *per se* category. Whether a statement is reasonably susceptible to an innocent interpretation is a question of law for the court to decide.

Id. at 1215 (quoting Chapski v. The Copley Press, 442 N.E.2d 195, 199 (Ill. 1982)) (citations omitted).

The defendant argues that the statement that the plaintiff was a "drunk" is not "obviously and naturally harmful" to the plaintiff, and that this statement "can be innocently construed to refer to someone who drinks too much, which does not, on its face, apply to any of the specified categories under defamation *per se*." (Def.'s Br. at 7.) In response, the plaintiff argues that the statement imputes an inability to perform or want of integrity in the discharge of his employment and prejudices him or imputes a lack of ability in his profession. (See Pl.'s Response Br. at 3-4.) The plaintiff also disputes the defendant's interpretation of the "innocent construction" rule.

The plaintiff argues that the "drunk" statement imputes an inability to perform his job or prejudices him in his profession because the statement implies "current drinking, even at work, and sloughing off as a result." (Pl.'s Response at 3.) This argument appears to be based in part upon the claim that the plaintiff was referred to as a "drunken f - - - ing bum," a statement that was not specified in the plaintiff's complaint. See Doherty v. Kahn, 682 N.E.2d 163, 172 (Ill. App. Ct. 1997) (holding that cause of action for defamation must set forth allegedly defamatory statements with specificity); Goldstein v. Kinney Shoe Corp., 931 F. Supp. 595, 597 (N.D. Ill. 1996). (See Pl.'s Response at 3-4.) Since the plaintiff cannot proceed with a defamation claim that was not specified in the complaint, I shall simply ignore that portion of the plaintiff's argument that is grounded upon the "bum" reference.

In support of his argument that the statement imputes an inability to perform his job or prejudices him in his profession, the plaintiff refers me to Swan v. Thompson, 56 P. 878 (Cal.

9

1899), wherein the court stated:

> By the complaint it is charged that defendant used in the presence and hearing of one Hanna the words, 'He [plaintiff] has been in the habit of getting drunk.' Defendant now insists that these words are not actionable. This contention is based upon the claim that they were not spoken of plaintiff in his position as a master mariner. In other words, it is claimed that he was not charged to have been in the habit of getting drunk while navigating his vessel. We cannot agree with this contention. To say that a 'master mariner is in the habit of getting drunk' is a charge so broad as to cover the mariner's conduct upon his voyages as well as between his voyages, upon the sea as well as upon the land. There is no qualification of the language. It covers the drinking habits of the master mariner, wherever he may be. We can imagine no language better calculated to ruin a master mariner than the language here used, to wit, 'He is in the habit of getting drunk.' No man of the slightest business prudence would employ such a master mariner to navigate his ship. No insurance company would take a risk upon the cargo or the ship under the command of such a captain. Upon this question the test seems to be, do the words used directly tend to injure the party by reason of their relation to his occupation? Applying this rule to the case at bar, the slanderous character of the words is fully apparent, for the reasons already suggested. The foregoing principle of law is more fully laid down in subdivision 3 of section 46 of the Civil Code, as follows: 'Slander is a false and unprivileged publication other than libel, which * * * (3) tends directly to injure him in respect to his office, profession or business, either by imputing to him general disqualification in those respects which the office or other occupation peculiarly requires, or by imputing something with reference to his office, profession, trade or business that has a natural tendency to lessen its profit.' Tested by this provision of the law, we are prepared to say an accusation against a master mariner, that he is in the habit of getting drunk, imputes to him a 'general disqualification' in those respects which the occupation peculiarly requires. The occupation of master mariner, above all things, peculiarly requires a man who is not in the habit of getting drunk.

Swan v. Thompson, 56 P. 878, 880 (Cal. 1899). The plaintiff claims that, as in Swan, the defendant "put no limits on his language" by failing to specify that the plaintiff was never drunk at work and was no longer drinking, and thereby "sent out a clear message Mr. McKay was actively drinking to excess habitually, was 'drunk' all the time, including at work and was driving 'drunk[.]'" (Pl.'s Response at 4.) While it is true that the defendant put no limits on his characterization of the plaintiff as a "drunk," nor is there any evidence that the defendant stated that the plaintiff was "*in the habit* of getting drunk," which was the claim in Swan. I disagree with the plaintiff's suggestion that calling McKay "a drunk," without more, necessarily sends the message that McKay was drunk all of the time, including at work. In addition, in Swan the court noted that "[t]he occupation of master mariner, above all things, peculiarly requires a man who is

10

not in the habit of getting drunk." Swan, 56 P. at 880. The plaintiff has made no argument concerning the peculiar requirements of his job at Town & Country and has not suggested that no language would be better suited to ruin a man in his profession or that he would be generally disqualified from being a new car sales manager by being "a drunk." In other words, it seems to me that the plaintiff has not made an argument that is adequate to invoke the Swan rule.

I cannot conclude that referring to someone as "a drunk," without elaboration, is defamatory *per se* because it imputes an inability to perform a job or prejudices someone in his profession. It seems to me that simply calling a person "a drunk" might indeed impute an inability to perform a particular job or prejudice a person in his employment *under certain circumstances*, but in order for a statement to qualify as defamation *per se*, its defamatory character must be apparent on its face without reference to extrinsic facts. Schaffer v. Zekman, 554 N.E.2d 988, 991 (Ill. App. Ct. 1990) (quoting Owen v. Carr, 497 N.E.2d 1145, 1147 (Ill. 1986)). Here, the plaintiff attempts to rely on extrinsic facts to indicate that Cohen's "message" was that McKay was drunk at work. (See Pl.'s Response at 4.) The plaintiff also claims that "Cohen said precisely what he meant to convey - Mr. McKay's performance of his work of profession was affected by his 'drunkenness' . . . ." (Pl.'s Response at 5.) However, there is no evidence or allegation that Cohen actually said anything of the kind to any third party. (Id.)[6] Extrinsic facts are required to explain that Cohen's reference to the plaintiff as a drunk "meant" that the plaintiff's job performance was affected, and such facts are not to be considered in support of an argument that a plaintiff was defamed *per* se. Schaffer, 554 N.E.2d at 991.[7]

Next, the defendant argues that the alleged statement that the plaintiff was driving under the influence of alcohol is not defamation *per se* because the actual words used by Cohen do not "impute the commission of a criminal offense." Bryson v. News America Publications, Inc., 672 N.E.2d 1207, 1214 (Ill. 1996). In response, the plaintiff first points out that "Judge Nordberg has already ruled in this case that Plaintiff's allegations of drunk driving would be defamation per se." (Pl.'s Response at 3.) However, Judge Nordberg held only that "Plaintiff states a claim for defamation *per se*." (Filing 13 at 13; McKay v. Town & Country Cadillac, Inc., 991 F. Supp. 966, 973 (N.D. Ill. 1997) (emphasis added).) The previous denial of a portion of the defendants' motion to dismiss does not mean that Cohen's motion for summary judgment necessarily fails.

The plaintiff also argues that drunk driving is a crime in Illinois, and that Cohen accused McKay of drunk driving on numerous occasions. (See Pl.'s Response at 3 (citing Pl.'s Response

---

[6]There is evidence suggesting that Cohen believed that McKay's performance was affected by his alcoholism, but there is no evidence that this belief was published. (See Pl.'s Statement of Facts, ¶ 27.)

[7]Since I have concluded that the bare statement that the plaintiff was "a drunk" does not fall within one of the four categories of defamation *per se*, I need not consider the defendant's argument that the statement may be innocently construed. See Bryson v. News America Publications, Inc., 672 N.E.2d 1207, 1214-15 (Ill. 1996).

11

to Def.'s Facts, ¶ 8; Pl.'s Statement of Facts, ¶¶ 4-5, 11-12, 16, 18).) I shall review each of the incidents cited by the plaintiff to determine whether the defendant did, in fact, accuse the plaintiff of drunk driving.

First, paragraph 8 of the plaintiff's response to the defendant's 12(M) statement states, in part, as follows:

> j)   After learning of Mr. McKay's alcoholism, Mr. Cohen went to Bob Novak, Service Manager. Mr. Cohen was upset. He asked Mr. Novak what he would do in the situation of an employee with a demonstration vehicle who was an alcoholic and going to AA. . . .[8]
> k)   Mr. Novak understood that Defendant Cohen was referring to Mr. McKay.

(Pl.'s Response to Def.'s Facts, ¶ 8j-k (citations omitted).) The evidence shows that Cohen did not refer to McKay by name during his conversation with Novak, and Mr. Novak only assumed that Cohen was talking about the plaintiff. (See Pl.'s Statement of Material Facts Pursuant to Local Rule 12(N), filing 61, Ex. 2, Novak Dep. at 33:21-37:7.) Since McKay was not mentioned by name during the conversation, it cannot be defamatory *per se* as to him. Schaffer v. Zekman, 554 N.E.2d 988, 991-92 (Ill. App. Ct. 1990). Moreover, this evidence does not appear to contain any accusation of driving under the influence.

Paragraphs 4-5 of the plaintiff's statement of additional facts state:

> 4.   Mr. Cohen stated "I don't want a drunk driving my car." He then instructed Mr. Bacigalupo to take the vehicle away from Mr. McKay. . . .
> 5.   Mr. Bacigalupo was clear that the implication of Mr. Cohen's statement was that he was accusing Mr. McKay of actually driving the vehicle under the influence of alcohol. It was "crystal clear" to Mr. Bacigalupo that Mr. Cohen was accusing Mr. McKay of DUI (Driving Under the Influence).

(Pl.'s Statement of Facts, ¶¶ 4-5 (citations omitted).) Initially, it seems to me that Bacigalupo's interpretation of the implications of Cohen's statement constitutes extrinsic evidence offered to explain the defamatory nature of Cohen's statement. Therefore, for the purposes of determining whether there is a genuine issue that the statement was defamatory *per se*, I shall disregard Bacigalupo's interpretation of the statement. See Schaffer v. Zekman, 554 N.E.2d 988, 991 (Ill. App. Ct. 1990) (quoting Owen v. Carr, 497 N.E.2d 1145, 1147 (Ill. 1986)).

The statement, "I don't want a drunk driving my car," does not accuse the plaintiff of

---

[8]This subparagraph also contains the statement that "He called Mr. McKay a drunk." (Pl.'s Response to Def.'s Facts, ¶ 8j.) However, the evidence cited does not support this statement. (See Pl.'s Statement of Material Facts Pursuant to Local Rule 12(N), filing 61, Ex. 2, Novak Dep. at 33:21-37:7.)

12

having committed a crime nor even state definitively that the plaintiff will commit a crime. Instead, at most, it merely insinuates or implies that the plaintiff will commit the crime of driving while intoxicated sometime in the future. Such a statement is not enough to impute the commission of a criminal offense for the purposes of establishing defamation *per se*. See RESTATEMENT (SECOND) OF TORTS § 571 cmt. c (1976) ("[I]t is not enough merely to suggest that another is capable of committing a crime or that he would commit it if sufficient opportunity were presented."). Therefore, I conclude that Cohen's statement to Bacigalupo does not constitute defamation *per se*.

Next, the plaintiff cites to paragraphs 11-12 of his statement of additional facts. These paragraphs are identical to paragraph 8j-k of the plaintiff's response to the defendant's 12(M) statement, which I have reviewed above. (Compare Pl.'s Statement of Facts ¶¶ 11-12 with Pl.'s Response to Def.'s Facts, ¶ 8j-k.) The plaintiff also refers me to paragraph 18 of his statement of facts, but this paragraph does not concern any accusations of driving under the influence. (See Pl.'s Statement of Facts, ¶ 18.)

Finally, the plaintiff refers to paragraph 16 of his statement of facts, which states:

16. Mike Hambach was the Used Car Manager.
    a) By Defendant's own admission, Mr. Hambach did not have any supervisory authority over Mr. McKay.
    b) Mr. Hambach witnessed Cohen state on the floor of the Town and Country showroom in the presence of customers and employees then present, "Did you hear about McKay? He's a juicer. No way am I letting that drunk drive my car[.]"[9]
    c) This occurred after Defendant Cohen learned of Mr. McKay's alcoholism.

(Pl.'s Statement of Facts, ¶ 16.) Once again, I find that the statement, "No way am I letting that drunk drive my car," does not accuse the plaintiff of having committed a crime, but merely implies that the plaintiff will someday drive while intoxicated. The statement does not impute the commission of a criminal offense, and I cannot conclude that it amounts to defamation *per se*. See RESTATEMENT (SECOND) OF TORTS § 571 cmt. c (1976).

This exhausts the plaintiff's evidence that Cohen accused him of driving under the influence, and the plaintiff has failed to establish that there is a genuine issue for trial. I find that Cohen made no accusation of criminal conduct on the part of the plaintiff that amounts to defamation *per se*.

---

[9] According to Hambach's affidavit, Cohen actually stated, "There's no way I'm letting that drunk drive my car." (Pl.'s Statement of Material Facts Pursuant to Local Rule 12(N), filing 61, Ex. 4, Hambach Aff. ¶ 5.)

13

Although the plaintiff's response brief is not clear on this matter, it is possible that the plaintiff intended to argue that the "drunk driving" statements not only impute the commission of a criminal offense to the plaintiff, but also impute an inability to perform his job or prejudice the plaintiff in his profession. (See Pl.'s Response Br. at 2-5.) However, such an argument would fail for the same reasons that caused me to reject the plaintiff's argument that the "drunk" statement imputed an inability to perform his job or prejudiced him in his profession. The plaintiff has not argued that the peculiar requirements of his job at Town & Country render a comment implying that the plaintiff would drive under the influence especially harmful, and he has otherwise failed to invoke the Swan rule as described above. There may be extrinsic facts demonstrating that an implication that the plaintiff would drive under the influence impugns the plaintiff's job skills or prejudices him in his profession, but those facts cannot be relied upon to demonstrate that such a statement amounts to defamation *per se*. Schaffer v. Zekman, 554 N.E.2d 988, 991 (Ill. App. Ct. 1990) (quoting Owen v. Carr, 497 N.E.2d 1145, 1147 (Ill. 1986)). I conclude that the statement, "I don't want a drunk driving my car," does not, on its face, impute to the plaintiff an inability to perform his job or prejudice the plaintiff in his profession.[10]

None of the statements alleged by the plaintiff in his complaint constitute defamation *per se*. As a result, the defendant is entitled to summary judgment on Count IV of the plaintiff's complaint.

### D. Defamation Per Quod

The plaintiff argues that he has provided evidence of extrinsic facts demonstrating that the statements reviewed above are defamatory *per quod*, and that he has evidence of specific damages flowing from the defamation. (See Pl.'s Response at 14-15.) However, the plaintiff has not pleaded defamation *per quod* in his complaint. In fact, in the defendants' motion to dismiss, Cohen and Town & Country argued specifically that the plaintiff failed to properly plead defamation *per quod*. (See Defs.' Mem. in Supp. of Their Mot. to Dismiss, filing 5, at 13-14.) In response to this argument, the plaintiff stated the following:

> Defendants [sic] argument on defamation *per quod* is moot. Plaintiff has stated a cause of action for defamation *per se* and need not, therefore, plead special damages.

(Pl.'s Response to Defs.' Mot. to Dismiss, filing 8, at 15.) Perhaps in reliance upon this statement by the plaintiff, Judge Nordberg did not consider the defendants' argument that the plaintiff failed to properly plead defamation *per quod*. (See filing 13 at 12-13; McKay v. Town & Country Cadillac, Inc., 991 F. Supp. 966, 972-73 (N.D. Ill. 1997).) Instead, the judge noted,

---

[10]Once again, because I have concluded that this statement does not fall within one of the four categories of defamation *per se*, I need not consider the defendant's argument that the statement may be innocently construed. See Bryson v. News America Publications, Inc., 672 N.E.2d 1207, 1214-15 (Ill. 1996).

14

"Lastly, Plaintiff seeks to state a claim for defamation *per se*." (See filing 13 at 12; McKay v. Town & Country Cadillac, Inc., 991 F. Supp. 966, 972 (N.D. Ill. 1997).) The plaintiff's attempt to proceed on a claim of defamation *per quod* after his previous representation to this court in connection with the defendants' motion to dismiss is not well taken. I find that based upon the plaintiff's prior statements to this court, any claim of defamation *per quod* must be dismissed.

Since I have determined that the defendant is entitled to judgment as a matter of law on the plaintiff's claim of defamation *per se*, I find that it is unnecessary to consider the defendant's arguments that the allegedly defamatory statements were privileged. (See Def.'s Br. at 12-14.) Summary judgment will be granted for the defendant on Count IV of the plaintiff's complaint.

**IT IS ORDERED** that Defendant Max Cohen's Motion for Summary Judgment, filing 43, is granted.

Dated July 9, 2002.

BY THE COURT

Warren K. Urbom
United States Senior District Judge